No. 26-1160

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

———————

FEDMET RESOURCES CORPORATION,

*Plaintiff-Appellee,*

v.

MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE,

*Defendant-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

———————

On Appeal from the United States Court of International Trade
No. 1:23-cv-00117-MMB, Hon. M. Miller Baker

———————

# OPENING BRIEF FOR DEFENDANT-APPELLANT

———————

J. Michael Taylor
*Counsel of Record*
Ashley C. Parrish
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
jmtaylor@kslaw.com

*Counsel for Magnesia Carbon
Bricks Fair Trade Committee*

December 10, 2025

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Appellant certifies the following:

1. The full name of the party represented by me:

   **Magnesia Carbon Bricks Fair Trade Committee.**

2. The names of the real parties in interest represented by me:

   **The Committee is an *ad hoc* association comprised of the following U.S. producers of magnesia carbon bricks: Magnesita Refractories Company, HarbisonWalker International, Inc. ("HWI"), and Resco Products, Inc.**

3. Parent corporations and publicly held companies that own 10% or more of stock in the party:

   **Magnesita Refractories Company is a subsidiary of RHI Magnesita N.V., a publicly traded company. In 2023, HWI was acquired by Platinum Equity and now operates as a member of Calderys Group. Resco Products, Inc. continues to operate as a separate manufacturing entity after its January 2025 acquisition by RHI Magnesita, N.V., a publicly traded company.**

4. The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   **None.**[1]

---

[1] Kellam M. Conover appeared at the Court of International Trade and in this proceeding, before passing away in November 2025.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   ***Fedmet Resources Corporation v. United States***, **USCIT Court No. 21-00248 (stayed pending resolution of this action).**

6. The organizational victims and bankruptcy cases applicable to this appeal:

   **N/A.**

Date: December 10, 2025

*/s/ J. Michael Taylor*
J. Michael Taylor

*Counsel for Magnesia Carbon Bricks Fair Trade Committee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES .......................................vi

INTRODUCTION ..................................................................1

JURISDICTION ...................................................................3

STATEMENT OF THE ISSUE ON APPEAL ..........................3

STATEMENT OF THE CASE ...............................................4

    A.    Statutory and Regulatory Framework ...................................4

    B.    Procedural History ...............................................10

SUMMARY OF ARGUMENT ...............................................14

STANDARD OF REVIEW.....................................................16

ARGUMENT .......................................................................17

I.    *Fedmet I* Distinguished Between In-Scope MCBs and Out-of-Scope MAC Bricks Based on Functionality and Standard Industry Terminology ...................................................18

II.    Commerce Faithfully and Properly Applied *Fedmet I*...................22

III.    The Trade Court's Contrary Ruling Is Erroneous .........................24

    A.    The Trade Court Rewrote *Fedmet I*'s Distinction Between MCBs and MAC Bricks ...........................................25

    B.    The Trade Court Nullified the *Orders* by Making Potentially All MCBs Out of Scope ......................................31

CONCLUSION ....................................................................34

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Altx, Inc. v. United States,*
   370 F.3d 1108 (Fed. Cir. 2004) ........................................... 24

*Fedmet Res. Corp. v. United States (Fedmet I CIT),*
   911 F. Supp. 2d 1348 (Ct. Int'l Trade 2013) ............................. *passim*

*Fedmet Res. Corp. v. United States (Fedmet I),*
   755 F.3d 912 (Fed. Cir. 2014) ......................................... *passim*

*Nippon Steel Corp. v. United States,*
   458 F.3d 1345 (Fed. Cir. 2006) ........................................... 24

*Viraj Grp., Ltd. v. United States,*
   343 F.3d 1371 (Fed. Cir. 2003) ........................................... 17

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................... 17, 22

19 U.S.C. § 1517(b) ........................................................ 5

19 U.S.C. § 1671 ........................................................... 4

19 U.S.C. § 1673 ........................................................... 4

19 U.S.C. § 1677j(c)(1) ................................................... 32

28 U.S.C. § 1295(a)(5) ..................................................... 3

**Regulations**

19 C.F.R. § 351.225(a) ..................................................... 4

19 C.F.R. § 351.225(k)(1) ................................................. 23

19 C.F.R. § 351.226(j) .................................................... 32

19 C.F.R. § 351.227 ........................................................ 5

*Certain Magnesia Carbon Bricks from Mexico and
the People's Republic of China: Antidumping Duty Orders,*
75 Fed. Reg. 57257 (Sep. 20, 2010) ...................................................6, 7

*Certain Magnesia Carbon Bricks from the
People's Republic of China: Countervailing Duty Order,*
75 Fed. Reg. 57442 (Sep. 21, 2010) ...................................................6, 7

**Rules**

Fed. R. App. P. 4(a)(1)(B)(i) .......................................................................13

**Other Authorities**

Transcript of Oral Argument,
*Fedmet Res. Corp. v. United States,*
911 F. Supp. 2d 1348 (Ct. Int'l Trade 2013)
(No. 12-cv-00215-NT), Dkt. 62....................................................9, 23, 26

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant Magnesia Carbon Bricks Fair Trade Committee states that no other appeal in or from the same proceeding was previously before this or any other appellate court.

Counsel is aware of one other case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

- *Fedmet Res. Corp. v. United States*, USCIT Court No. 21-00248 (stayed pending resolution of this action).

Counsel also is aware that, on December 5, 2025, the United States filed a notice of appeal at the Court of International Trade challenging the same judgment that is the subject of this appeal. The government's separate appeal has not yet been docketed or assigned a case number by this Court. *See* Dkt. 80.

## INTRODUCTION

In its decision below, the Court of International Trade rewrote one of this Court's precedents and effectively nullified three antidumping and countervailing duty orders issued by the Department of Commerce ("*Orders*"). This Court should reverse and vacate that decision to prevent importers from flooding the domestic market with products at unfairly traded prices that materially injure domestic producers.

The Commerce Department's *Orders* protect the domestic industry by imposing substantial duties on magnesia carbon bricks ("MCBs") imported from China and Mexico. MCBs are a type of refractory brick that, because they have high thermal conductivity and perform well under high-temperature conditions, are used to line certain parts of ladles and furnaces employed in steelmaking. In *Fedmet Resources Corp. v. United States*, this Court ruled that the *Orders* include only MCBs and do not cover magnesia alumina carbon bricks ("MAC bricks"), which have a distinctive composition and perform differently. Because MAC bricks are more stable but have lower thermal conductivity than MCBs, they are used for different purposes. *See Fedmet Res. Corp. v. United States* (*Fedmet I*), 755 F.3d 912, 915, 921–22 (Fed. Cir. 2014).

At issue in this appeal is how much alumina is needed to transform an in-scope MCB into an out-of-scope MAC brick. Though not specifying any "cut-off point," *Fedmet I* recognized that this distinction was "well-understood" in the industry, *id.* at 921 (quotation marks omitted), explaining: "significant amounts of alumina" must be added to cause the "distinct properties that distinguish MAC bricks from MCBs." *Id.* at 917 (quotation marks omitted). Commerce faithfully applied that precedent and concluded that "at least five percent added alumina" is needed for a refractory brick to have those distinct properties and function as an out-of-scope MAC brick. Appx1014–Appx1015.

The Trade Court misinterpreted this Court's decision and dramatically narrowed the *Orders*' scope. In its view, *Fedmet I* "teaches that the addition of *any* alumina to an MCB takes it outside the orders," Appx15, meaning that a refractory brick that functions as an MCB and has the properties of an MCB nonetheless escapes duties if it includes some trace amount of alumina. There is no evidence, however, that trace amounts of alumina are sufficient to cause the distinctive properties of MAC bricks. To the contrary, refractory bricks with trace amounts of alumina do not perform as MAC bricks; they instead remain functionally

identical to other in-scope MCBs and are called MCBs in the industry. Because *every* "MCB" identified in the record contains trace amounts of alumina, the Trade Court's ruling means that instead of protecting domestic industry from unfairly traded MCBs, the *Orders* may not cover any actual MCBs at all.

The Court should correct the Trade Court's errors and vacate and remand for a proper consideration of Commerce's determination. To prevent any further harm to domestic MCB producers, the Court should issue its decision before August 2026.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUE ON APPEAL

Whether the Trade Court erred in vacating the Commerce Department's straightforward application of an earlier Commerce ruling implementing this Court's decision in *Fedmet I* on the ground that, under the Trial Court's view, any magnesia carbon bricks imported from China and Mexico that contain any trace amount of alumina are excluded from the scope of the applicable anti-dumping and countervailing duty orders, even if they perform and function the same as in-scope magnesia carbon bricks.

## STATEMENT OF THE CASE

This case involves a covered-merchandise inquiry into whether certain MCBs are subject to antidumping ("AD") and countervailing duty ("CVD") orders. Commerce originally determined that bricks that perform as MCBs, and do not function as MAC bricks, are covered products pursuant to *Fedmet I* and later Commerce rulings. After the Trade Court remanded, Commerce issued a redetermination under protest that was then sustained by the Trade Court. This appeal followed.

### A.      Statutory and Regulatory Framework

Congress has authorized Commerce to impose AD/CVD duties on imported goods that "benefit from certain government subsidies in their country of manufacture, or that are sold in the United States at less than fair value." *Fedmet I*, 755 F.3d at 918 (discussing 19 U.S.C. §§ 1671, 1673). After an investigation, Commerce may issue AD/CVD orders that impose duties on imported goods covered by its investigation. *See id.* Commerce may later issue a "scope ruling" to clarify whether a particular product is included within the scope of its orders. *See* 19 C.F.R. § 351.225(a).

The Enforce and Protect Act ("EAPA") authorizes U.S. Customs and Border Protection to investigate an allegation that "reasonably suggests"

an importer has evaded an AD/CVD order. 19 U.S.C. § 1517(b)(1)–(2). If Customs "is unable to determine whether the merchandise at issue is covered" by the order, it must refer that question to Commerce. *See id.* § 1517(b)(3)–(4). In such a "covered-merchandise" referral, Commerce may conduct a scope proceeding to determine whether merchandise is covered by the order. *See* 19 C.F.R. § 351.227.

This case relates to AD/CVD duties imposed on MCBs. "MCBs are a type of refractory brick used to line ladles and furnaces employed in steelmaking and steel handling processes." *Fedmet I*, 755 F.3d at 914. MAC bricks, in contrast, have "'distinct properties' that distinguish [them] from MCBs." *Id.* at 917. In particular, MAC bricks have "'significant amounts' of alumina"—sufficient to form the mineral spinel during steelmaking, "which prevents cracks and decreases chemical attack," making MAC bricks more stable, but with less thermal conductivity, than MCBs. *See id.* Given their distinct performance characteristics, MCBs and MAC bricks line different areas of furnaces and ladles in the steel making process that face different amounts of wear. *Id.* at 915.

Every MCB in the record includes at least some added alumina, as discussed in greater detail below. The issue in this appeal is whether the *Orders* cover MCBs with trace amounts of alumina (less than 5%), which is insufficient to form spinel and cause the distinct properties and functionality of MAC bricks.

**1.** The *Orders* cover "'certain chemically bonded (resin or pitch), magnesia carbon bricks," defined as:

> [MCBs] with a magnesia component of at least 70 percent magnesia ("MgO") by weight, regardless of the source of raw materials for the MgO, with carbon levels ranging from trace amounts to 30 percent by weight, regardless of enhancements . . . and regardless of whether or not antioxidants are present . . . .

*Certain Magnesia Carbon Bricks from Mexico and the People's Republic of China: Antidumping Duty Orders,*75 Fed. Reg. 57257, 57257 (Sep. 20, 2010); *Certain Magnesia Carbon Bricks from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 57442 (Sep. 21, 2010).[2] This scope reflects that the "petition focused 'only on MCB[s]'" and bricks that "'provide the same performance' as MCBs." *Fedmet I*, 755 F.3d at 919 (quoting the petition). Specifically, the petition "distinguish[ed]

---

[2] The *Orders* cover only "certain" chemically bonded MCBs in the sense that they cover only MCBs with at least 70% magnesia and do not cover MCBs with less than 70% magnesia.

MCBs from other types of refractory bricks" that "'possess certain unique properties'" and "'*are not generally substitutable.*'" *Id.* at 914 (quoting the petition). During the investigation, the U.S. International Trade Commission gathered and evaluated pricing data for "MCB[s] with added alumina" insufficient to cause those distinct properties. *Id.* at 920 n.6 (quotation marks omitted).

The *Orders* impose antidumping duties of up to 236% on covered imports from China and 57.90% on covered imports from Mexico, plus countervailing duties of up to 253.87% on covered imports from China. 75 Fed. Reg. at 57258; 75 Fed. Reg. at 57443.

**2.** This Court addressed Commerce's first scope ruling on the *Orders* in *Fedmet I*. At issue there were Fedmet's Bastion bricks, which all sides agreed were "MAC bricks" because their 8–15% added alumina was sufficient to form spinel and impart the distinct properties of MAC bricks. *See Fedmet I*, 755 F.3d at 916–17. The parties disputed, however, whether during the investigation Resco (the petitioner) had disclaimed coverage of all MAC bricks or only "high-alumina" MAC bricks.[3]

---

[3] "[L]ow-alumina" MAC bricks contain less than "30% alumina"; "high-alumina" MAC bricks contain between 30% and "nearly 50% alumina"; and "[b]ricks with more alumina than magnesia are called alumina

Commerce determined that Resco "intended to exclude only some [MAC bricks], namely, high-alumina [MAC bricks] that can never meet the scope's plain language" because their 30% alumina content meant the bricks could never have more than 70% magnesia, as the *Orders* require. *Fedmet Res. Corp. v. United States* (*Fedmet I CIT*), 911 F. Supp. 2d 1348, 1354 (Ct. Int'l Trade 2013) (emphasis omitted), *rev'd and remanded*, *Fedmet I*, 755 F.3d 912 (Fed. Cir. 2014).

This Court reversed, holding that Resco had "disclaim[ed] coverage of all MAC bricks." *Fedmet I*, 755 F.3d at 921–22. The Court emphasized that the *Orders* are "limited to 'magnesia carbon bricks,'" and that the meaning of this limitation "must be based on the meaning given to that language during the underlying investigations." *Id.* at 921. That meaning turned on functionality and standard industry terminology: The petition "rel[ied] on industry terminology" to define the covered products as "MCBs," recognizing that "other types of refractory bricks . . . 'do not provide the same performance' as MCBs." *Id.* at 919–20 (quoting the petition). And when Commerce and the International Trade Commission

---

magnesia carbon bricks ('AMCBS')." *Fedmet Res. Corp. v. United States* (*Fedmet I CIT*), 911 F. Supp. 2d 1348, 1351 n.2 (Ct. Int'l Trade 2013), *rev'd and remanded*, *Fedmet I*, 755 F.3d 912 (Fed. Cir. 2014).

"adopted this industry terminology," they "rel[ied] on [petitioner's] representation that MAC bricks are not interchangeable with MCBs." *Id.* at 920.

Because the bricks at issue in *Fedmet I* were undisputedly MAC bricks, this Court had no occasion to specify the "cut-off point at which addition of alumina to an MCB transforms it into a MAC brick." *See* 755 F.3d at 921 (quotation marks omitted). But the Court stressed that the distinction between in-scope MCBs and out-of-scope MAC bricks was "ubiquitous and well-understood" based on MAC bricks' distinct functionality. *Id.* And Fedmet itself conceded that "the cutoff between a magnesium carbon brick and a MAC brick" was "about five percent" added alumina. *See* Transcript of Oral Argument at 17:4–7, *Fedmet I CIT*, 911 F. Supp. 2d 1348 (No. 12-cv-00215-NT), Dkt. 62 ("*Fedmet I CIT* Oral Arg. Tr.").

On remand in the *Fedmet* proceeding, Commerce implemented this Court's decision and ruled that the 8–15% alumina content in Fedmet's Bastion bricks was sufficient for those bricks to qualify as MAC bricks. Appx2125.

**3.** Commerce's second scope relevant ruling on the *Orders* came in the *S&S Refractories* proceedings. *See* Appx2131–Appx2136. There, the bricks at issue "contain[ed] at least five percent added alumina." Appx2132. Commerce determined that bricks with at least 5% alumina qualify as out-of-scope MAC bricks "based on [this Court's] decision in *Fedmet*." Appx2134. Commerce "agree[d]" that "5 percent alumina is sufficient to form spinel, which imparts the distinct properties that distinguish MAC bricks from [MCBs]." Appx2133–Appx2134.

## B. Procedural History

After the *Fedmet* and *S&S Refractories* proceedings, Fedmet began "mis-labeling" its bricks to "evade AD/CVD duties." Appx1031 n.14. In particular, Fedmet "imported Pinnacle brand magnesia carbon bricks"—which have between 0.2% and 0.5% alumina content, Appx1903—"and declared such MCBs as non-subject Bastion brand magnesia alumina carbon bricks ('MAC')." Appx1048–Appx1049; *see also* Appx1278–Appx1286.

Customs investigated and concluded that Fedmet owed substantial AD/CVD duties on "all merchandise that Fedmet entered as Bastion MAC brick." Appx1049. After "Fedmet challenged [the] testing and

reporting methods" that Customs had used during its EAPA investigation, Customs found "it was unable to determine whether the imported merchandise constitutes covered merchandise," and referred the issue to Commerce. Appx1049.

1.    In its original determination, Commerce found that two of the eleven bricks tested by Customs were in-scope MCBs because they contained less than 5% alumina, but that it could not "determine whether the remaining nine samples reflect subject or non-subject bricks" because of Customs' testing procedure. Appx1038.

Commerce explained that the relevant inquiry is the amount of alumina content "at the time of importation." Appx1039. But Customs had used a testing methodology that "cause[s] distortions to the alumina content of a tested brick and, thus, the resulting chemical content measurements of that brick." Appx1042. Accordingly, Commerce concluded that the remaining nine test results "do not provide reliable information on the alumina content of the bricks at the time of importation." Appx1039.

2.    Fedmet then initiated this case in the Trade Court, challenging Commerce's use of the 5% dividing line established in the

*S&S Refractories* proceedings, as well as Commerce's conclusions about testing methodology. *See* Appx12. Appellant intervened in those proceedings in support of the government to protect the interests of domestic producers of MCBs. Appx12. The Trade Court vacated and remanded, addressing only Commerce's use of *S&S Refractories*' 5% dividing line. *See* Appx13–Appx18.

The Trade Court held that Commerce "erred as a matter of law in imposing its five-percent test" because *Fedmet I* supposedly "teaches that the addition of *any* alumina to an MCB takes it outside the orders," Appx15–Appx16—even though the bricks remain functionally identical to other in-scope MCBs and are called MCBs in the industry. Assuming that "low-alumina" bricks were MCBs with trace amounts of alumina (rather than MAC bricks with less than 30% alumina), the Trade Court reasoned that "the relevant sources do not mention, much less make a distinction between so-called low-alumina and high-alumina bricks." Appx15 (cleaned up).

**3.** On remand, Commerce issued a redetermination "[u]nder respectful protest." Appx2821. Commerce concluded that seven samples were not covered merchandise because they "contained an above-zero

quantity of alumina" according to "testing procedures which properly determined the alumina content at the time of importation." Appx2824. As to the remaining four samples, Commerce explained that the test results "that accurately measured alumina content" at the time of importation were "not on the administrative record of this proceeding." Appx2824. Commerce then directed Customs "to apply the standard set forth" in the Trade Court's decision as to those four samples. Appx2824–Appx2825.

4.    Appellant challenged Commerce's redetermination and sought reconsideration of the Trade Court's ruling that the *Orders* do not cover MCBs with trace amounts of alumina. *See* Dkt. 65. The Trade Court denied reconsideration and "[s]ustain[ed] the [agency]'s redetermination made under protest." Appx19.

5.    The Trade Court entered judgment on October 9, 2025. Appx26. Appellant filed its notice of appeal 28 days early, *see* Dkt. 77; COA.Dkt. 1-2; Fed. R. App. P. 4(a)(1)(B)(i), and moved to expedite the proceedings the same day the appeal was docketed, *see* COA.Dkt. 5. Appellant requested expediting briefing and a decision by this Court before August 2026 to prevent importers from capitalizing on the Trade

Court's ruling and "flood[ing] the market with MCBs (with trace amounts of alumina)" at unfairly traded and injurious prices. *Id.* at 11.

Although the motions panel has not yet ruled on expedition, Appellant self-expedited by filing this brief 37 days before the January 16, 2026 deadline established by Fed. Cir. R. 31(a)(1)(A).

## SUMMARY OF ARGUMENT

This Court should reverse the Trade Court, vacate its December 2024 order, and remand for further proceedings.

I.     *Fedmet I* held that the *Orders* cover only MCBs and not MAC bricks. 755 F.3d at 921–22. While this Court did not specify the "cut-off point at which addition of alumina to an MCB transforms it into a MAC brick," it found this distinction "well-understood" based on functionality and "standard" industry terminology, *id.* at 921 (quotation marks omitted), and it noted that the "'distinct properties' that distinguish MAC bricks from MCBs" require "'significant'" amounts of added alumina, *id.* at 917. Pursuant to *Fedmet I*, Commerce later ruled that bricks must have "at least 5 percent *added* alumina" to qualify as out-of-scope MAC bricks. Appx2134.

**II.** Commerce's original determination faithfully applied these precedents. Consistent with *Fedmet I*, Commerce explained that "[t]he *Orders* cover magnesia carbon bricks" only and that "the defining component of a MAC brick" is sufficient "alumina [that] creates certain chemical reactions which give the MAC bricks distinguishing performance features," Appx1014—which was "at least five percent added alumina" under Commerce's prior rulings. Appx1015. And as in *Fedmet I*, the petition and investigation "unequivocally confirm" that the *Orders* cover MCBs with only trace amounts of alumina. 755 F.3d at 919.

**III** The Trade Court vacated Commerce's determination on the erroneous premise that *Fedmet I* "teaches that the addition of *any* alumina to an MCB takes it outside the orders." Appx15.

The Trade Court misread—indeed, rewrote—*Fedmet I*. There is no evidence that trace amounts of alumina are sufficient to form spinel and produce the distinctive performance characteristics of MAC bricks. And there is no evidence that MCBs with only trace amounts of alumina are considered to be MAC bricks within the industry. The record is unequivocal that such MCBs both function as and are understood to be MCBs, not MAC bricks. *See*, *e.g.*, Appx1284; Appx1899–Appx1903.

The Trade Court's ruling would also effectively nullify the *Orders* by dramatically narrowing their scope and making it easy for importers to avoid payment of AD/CVD duties. Every MCB appearing in the record includes trace amounts of alumina. As far as Appellant is aware, the Trade Court's "any alumina" test could effectively transform essentially all MCBs into out-of-scope MAC bricks; to the extent foreign exporters manufacture MCBs that do not already include alumina, those manufacturers could easily evade the *Orders* by sprinkling alumina into their MCBs.

Accordingly, this Court should vacate the decision below and remand with instructions to the Trade Court to resolve the parties' remaining disputes on testing methodology.

## STANDARD OF REVIEW

"This Court reviews the Trade Court's grant or denial of judgment on the agency record without deference." *Fedmet I*, 755 F.3d at 918. Where the Trade Court forces Commerce to adopt an interpretation "under protest," this Court "consider[s] Commerce's interpretation to be its initial interpretation, not its later interpretation, which it adopted under protest." *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1377 n.2

(Fed. Cir. 2003). Accordingly, this Court "must uphold Commerce's [original] scope determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fedmet I*, 755 F.3d at 918 (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

## ARGUMENT

The relevant *Orders* cover "magnesia carbon bricks with . . . at least 70 percent magnesia." *E.g.*, Appx1007. The issue in this appeal is *how much* alumina is needed to transform in-scope MCBs into out-of-scope MAC bricks. For over a decade, the Court and Commerce recognized that this dividing line was "well-understood in the refractories industry," *Fedmet I*, 755 F.3d at 921: To qualify as a MAC brick, the brick must have "'significant'" amounts of added alumina sufficient to form spinel, *id.* at 917, meaning "at least 5 percent *added* alumina," Appx2134. Commerce's original determination adhered to this dividing line by concluding that a refractory brick must contain at least 5% alumina to function as a MAC brick. Appx1015.

In reversing Commerce's determination, the Trade Court ruled "that the addition of *any* alumina to an MCB takes it outside the orders"—even though such MCBs remain functionally identical to other

in-scope MCBs and are called MCBs by the industry. Appx15. That ruling not only rewrites this Court's decision in *Fedmet I*, it effectively nullifies the *Orders*, as it sweeps out of scope potentially all MCBs. The Court should vacate the decision below.

## I. *Fedmet I* Distinguished Between In-Scope MCBs and Out-of-Scope MAC Bricks Based on Functionality and Standard Industry Terminology.

This Court and Commerce have long distinguished in-scope MCBs from out-of-scope MAC bricks based on their different functionality and different terminology in the industry. Under *Fedmet I* and its progeny, two principles are pertinent here: (1) the Orders cover only MCBs; and (2) alumina-added bricks qualify as out-of-scope MAC bricks only if they function like MAC bricks and the industry understands them to be (and therefore refers to them as) MAC bricks.

1. In *Fedmet I*, this Court held that the *Orders* cover only MCBs, and that all MAC bricks are out of scope. 755 F.3d at 921–22. The Court found the distinction between in-scope MCBs and out-of-scope MAC bricks "clear and unambiguous." *Id.* at 921. It emphasized that the Orders themselves are expressly "limited to 'magnesia carbon bricks,'" and that the meaning of this limitation "must be based on the meaning

given to that language during the underlying investigations." *Id.* Importantly, this latter inquiry focused on the bricks' functionality and "'standard'" name within the industry. *Id.*

During the investigations, the Court explained, the petition "rel[ied] on industry terminology" to define the covered products as "MCBs," and recognized that "other types of refractory bricks . . . 'do not provide the same performance' as MCBs." *Id.* at 919–20 (quoting the petition). Commerce and the Trade Commission likewise "adopted this industry terminology" and "rel[ied] on [petitioner's] representation that MAC bricks are not interchangeable with MCBs." *Id.* at 920. The petition, Commerce, and the Trade Commission thus all distinguished MCBs from MAC bricks based on their functionality and industry terminology.

The distinction between MCBs and MAC bricks was, in fact, "ubiquitous and well-understood" in the industry precisely because of the bricks' different functionality. *Fedmet I*, 755 F.3d at 921. Unlike with MCBs, "the 'significant amounts' of alumina in MAC bricks" are sufficient to form the mineral spinel during steelmaking, "which prevents cracks and decreases" wear. *Id.* at 917. Given these "'distinct properties,'"

*id.*, steelmakers use MCBs and MAC bricks to line different areas of furnaces and ladles that face different amounts of wear, *id.* at 915.

Despite recognizing this clear distinction, *Fedmet I* had no occasion to identify the precise "cut-off point at which addition of alumina to an MCB transforms it into a MAC brick." *See* 755 F.3d at 921 (quotation marks omitted). That is because the bricks at issue contained 8–15% alumina and so, undisputedly, were MAC bricks according to their function and industry terminology. *See id.* at 916; *Fedmet I CIT*, 911 F. Supp. 2d at 1351 ("Fedmet argues that the 8–15% alumina ($Al_2O_3$) content of its Bastion bricks distinguish them from in-scope MCBs" because "the alumina reacts with magnesia in the brick at steelmaking temperatures to form a mineral called spinel," which "improves the [brick's] performance" (quotation marks omitted)).

*Fedmet I* thus held that the petitioner could not broaden the *Orders'* scope to cover refractory bricks that function as MAC bricks and are called MAC bricks by the industry. That holding, however, did not purport to narrow the *Orders'* scope with respect to any refractory bricks that do *not* function as MAC bricks and are *not* recognized as MAC bricks by the industry.

**2.** Commerce faithfully implemented *Fedmet I* in two subsequent scope rulings. On remand in *Fedmet*, Commerce ruled that the 8–15% alumina content in Fedmet's Bastion bricks was sufficient for those bricks to qualify as MAC bricks. Appx2125. And later in *S&S Refractories*, Commerce ruled that bricks must have "at least 5% *added* alumina" to qualify as out-of-scope MAC bricks. Appx2134. Commerce expressly "based" that determination on "the CAFC's decision in *Fedmet*"—agreeing that "5 percent alumina is sufficient to form spinel, which imparts the distinct properties that distinguish MAC bricks from [MCBs]." Appx2133–Appx2134. Indeed, other MAC bricks in the industry had "as low as 5 and 6 percent" alumina. Appx2134.

Just as this Court had done in *Fedmet I*, therefore, Commerce distinguished in-scope MCBs from out-of-scope MAC bricks based on their functionality and standard industry terminology. The upshot is that magnesia refractory bricks qualify as out-of-scope MAC bricks only if they have sufficient alumina to form spinel and thus have the "'distinct properties' that distinguish MAC bricks from MCBs." *Fedmet I*, 755 F.3d at 917.

## II. Commerce Faithfully and Properly Applied *Fedmet I*.

Commerce's original determination here straightforwardly applied the 5% dividing line established in the *S&S Refractories* proceedings. Because that determination properly applied *Fedmet I* and its progeny, it should be sustained. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

Consistent with *Fedmet I*, Commerce explained that "[t]he *Orders* cover magnesia carbon bricks" only and that "the defining component of a MAC brick" is sufficient "alumina [to] create[ ] certain chemical reactions which give the MAC bricks distinguishing performance features when in use." Appx1014. Even Fedmet agreed "[t]here is no other" way to create "positive irreversible expansion (to keep joints tight and reduce steel penetration)"—which is "what differentiates MAC bricks from [MCBs]." Appx1014 (quoting Appx2461).

Like this Court did in *Fedmet I*, Commerce looked to functionality and industry terminology to determine what distinguishes MAC bricks from MCBs. Commerce then straightforwardly applied its own earlier rulings, which established "a threshold amount of alumina" (5%) needed to classify bricks as out-of-scope "MAC bricks." Appx1015. Notably, "five percent" was the same "cutoff between a magnesium carbon brick and a

MAC brick" that Fedmet itself had advocated in *Fedmet I. See Fedmet I CIT* Oral Arg. Tr. 17:4–7. For bricks that did not "have an alumina content level sufficiently high enough to meet" that 5% threshold, Commerce determined that those bricks "do not qualify as MAC bricks and are, therefore, covered" by the *Orders*. Appx1018.

As in *Fedmet I*, moreover, the (k)(1) sources "unequivocally confirm" that the *Orders* cover MCBs that have only trace amounts of alumina and thus the same functionality as other in-scope MCBs. 755 F.3d at 919 (discussing 19 C.F.R. § 351.225(k)(1)). The "petition focused only on MCB[s]" that "provide the same performance as MCBs." *Id.* at 919 (quotation marks omitted); *see, e.g., id.* at 914 (the petition "distinguish[ed] MCBs from other types of refractory bricks" that "possess certain unique properties" and "*are not generally substitutable*" (quotation marks omitted)). The Trade Commission, as part of its injury investigation, included "MCBs with 4.6% added alumina" among the pricing products in the questionnaire used to gather data for its injury analysis. *Id.* at 924 (Wallach, J., dissenting). And Commerce previously determined that the *Orders* cover MCBs with less than 5% added alumina. Appx2134.

The record—indeed, Fedmet's own comments (and concessions)—supports Commerce's meticulously documented conclusions. *See* Appx1014–Appx1015; Appx1018. Because those conclusions are "reasonable and supported by the record as a whole," they are supported by substantial evidence. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004)); *id.* (explaining the substantial-evidence standard is "a high barrier to reversal" that is satisfied even when this Court does not "agree with the [agency's] decision" or would not "have reached the same result . . . in the first instance" (quotation marks omitted)). And as just explained, those conclusions closely adhere to *Fedmet I* and Commerce's prior scope rulings. Accordingly, the Court should sustain Commerce's original determination that bricks containing less than 5% of alumina do not qualify as out-of-scope MAC bricks.

## III. The Trade Court's Contrary Ruling Is Erroneous.

The Trade Court ruled Commerce "erred as a matter of law in imposing its five-percent test" because, it said, *Fedmet I* "teaches that the addition of *any* alumina to an MCB takes it outside the orders." Appx15–Appx16. On that view, MCBs with trace amounts of alumina are out of

scope even though they remain functionally identical to in-scope MCBs and are still called MCBs in the industry.

The Trade Court misread *Fedmet I*—plain and simple. While *Fedmet I* had no need to "identify [a] 'cut-off point'" between MCBs with added alumina and MAC bricks, 755 F.3d at 921, that does not mean it made the cut-off point *zero* added alumina. Indeed, given that no MCBs in the record are alumina-free, the Trade Court's "any alumina" rule would nullify the *Orders* by sweeping potentially all MCBs out of scope.

## A. The Trade Court Rewrote *Fedmet I*'s Distinction Between MCBs and MAC Bricks.

By distinguishing MCBs from out-of-scope MAC bricks based on the presence of *any* alumina, the Trade Court rewrote *Fedmet I*'s clear distinction based on MAC bricks' different functionality and industry terminology. The root of that error was the Trade Court's demonstrably incorrect view of what this Court meant by "low-aluminum" MAC bricks.

**1.** In terms of functionality, there is no evidence that the addition of only *trace* amounts of alumina is sufficient to qualify as a MAC brick. To the contrary, all agree that spinel formation is "what differentiates MAC bricks from" in-scope MCBs. Appx1014 (Commerce); Appx2461 (Fedmet); Appx2657 ("Fedmet is not disputing that **all bona**

*fide* MAC bricks must contain added alumina sufficient to promote spinel formation" (emphasis added)). Yet it requires "'significant amounts' of alumina"—not trace amounts—to form spinel and cause the "'distinct properties' that distinguish MAC bricks from MCBs." *Fedmet I*, 755 F.3d at 917. As Fedmet itself conceded in *Fedmet I*, this "cutoff" is "about five percent" alumina. *Fedmet I CIT* Oral Arg. Tr. 17:4–7; *id.* at 16:22–23 ("five percent . . . is the practical lower limit for what constitutes a MAC brick"); *see* Appx1014–Appx1015 (Commerce); Appx2133–Appx2134 (same).

The same is true for standard industry terminology. There is no evidence that the "ubiquitous" and "'standard'" term "MAC bricks" includes MCBs with trace amounts (less than 5%) of added alumina. *Fedmet I*, 755 F.3d at 921. To the contrary, "the Commission's pricing investigation" in *Fedmet I* "included MCBs with 4.6% added alumina"— meaning that both the International Trade Commission and the producers of those bricks viewed bricks with trace amounts of alumina as in-scope "MCBs." *Id.* at 924 (Wallach, J., dissenting).

The *Fedmet I* majority suggested in dicta that the Trade Commission may have "erred in including pricing data" for this product.

755 F.3d at 920 n.6. But the panel majority never held that this single product was "outside the scope of the investigations," *id.*, and it ostensibly assumed that 4.6% added alumina was sufficient to form spinel and hence qualify as an out-of-scope MAC brick. After all, no party in *Fedmet I* needed to address how much alumina was needed to form spinel.

Even Fedmet's own product list clearly distinguishes MAC bricks from MCBs with trace amounts of added alumina. The only "Magnesia Alumina Carbon" bricks Fedmet markets are 10%-alumina Bastion-brand bricks. Appx1903. Fedmet's 0.2%-alumina Pinnacle-brand bricks, in contrast, are "marketed . . . as an MCB," Appx1284; *see* Appx1903, and used in a different part of the ladle, Appx1899–Appx1901. In fact, the basis for the EAPA case underlying the present appeal was that Fedmet was selling to U.S. customers reformulated bricks (with trace amounts alumina) as Pinnacle branded MCBs while not identifying to U.S. Customs at the time of entry that the bricks were subject merchandise. Appx1048–Appx1049; Appx1285–Appx1286. Fedmet's own terminology confirms the "ubiquitous" industry standard that MCBs with trace amounts of alumina are not MAC bricks. *Fedmet I*, 755 F.3d at 921.

Accordingly, the Trade Court rewrote the distinction this Court drew in *Fedmet I* between in-scope MCBs and out-of-scope MAC bricks. The Trade Court's dividing line bears no resemblance to this Court's distinction based on functionality and standard industry terminology.

**2.** The Trade Court appears to have misinterpreted this Court's statement that the (k)(1) "sources 'do not mention, much less make a distinction between so-called low-alumina and high-alumina bricks.'" Appx15 (cleaned up) (quoting *Fedmet I*, 755 F.3d at 922). The Trade Court assumed the term "low-alumina" bricks referred to *MCBs* with trace amounts of alumina, insufficient to form spinel. But that phrase actually referred to terminology for classifying *MAC bricks* based on their alumina (and magnesia) content.

This is how the lower court in *Fedmet I* explained it: "As the amount of magnesia in an MACB increases, the amount of room left for added alumina decreases"; so "a low-alumina brick with 70% magnesia cannot contain more than 30% alumina, whereas a high-alumina brick with less than 70% magnesia can have up to nearly 50% alumina." *Fedmet I CIT*, 911 F. Supp. 2d at 1351 & n.2 ("Bricks with more alumina than magnesia are called alumina magnesia carbon bricks ('AMCBs')."). This Court

adopted the same terminology, explaining that the term MAC bricks "can refer to low-alumina bricks as well as high-alumina bricks," *Fedmet I*, 755 F.3d at 922 (quoting *Fedmet I CIT*, 911 F. Supp. 2d at 1354), where "'low-alumina' bricks" are "MAC bricks with more than 70% magnesia," *i.e.*, less than 30% alumina, *id.* at 917–18.

The low-alumina/high-alumina distinction highlighted by the Trade Court is therefore an unhelpful distraction. Far from dividing MCBs and MAC bricks, that line distinguishes two types of MAC bricks— those with less than 30% alumina ("low-alumina"), and those with more than 30% alumina ("high-alumina"). *That* dividing line, however, has no bearing on the basic fact that what distinguishes MAC bricks from other refractory bricks, including MCBs, is their inclusion of sufficient (*i.e.*, "significant") amounts of alumina sufficient to form spinel. *Fedmet I*, 755 F.3d at 917.

The Trade Court's ruling also cannot be squared with how *Fedmet I* was litigated. The key issue in *Fedmet I* was whether the petitioner Resco had disclaimed coverage of all MAC bricks or only some MAC bricks. Commerce determined that Resco "intended to exclude only some MACBs, namely, high-alumina MACBs that can never meet the scope's

plain language"—which meant that the 8–15%-alumina Bastion bricks were covered products. *Fedmet I CIT*, 911 F. Supp. 2d at 1354. But this Court rejected that determination and held that Resco "disclaim[ed] coverage of all MAC bricks in general" because "the (k)(1) sources do not mention, much less make a distinction, between so-called 'low-alumina' and 'high-alumina' bricks." *Fedmet I*, 755 F.3d at 919, 922.

None of this analysis would have been appropriate or apposite on the Trade Court's view that "low-alumina" bricks referred to MCBs with only trace amounts of alumina. If the Trade Court were correct, it would have been irrelevant whether Resco "intended to exclude only some" MAC bricks, as Commerce found, *Fedmet I CIT*, 911 F. Supp. 2d at 1354 (emphasis omitted), or instead "disclaim[ed] coverage of all MAC bricks in general," as this Court ruled, *Fedmet I*, 755 F.3d at 919.

At bottom, the Trade Court misapprehended what was at issue in *Fedmet I* and, consequently, what this Court held. This Court's holding that the *Orders*' scope cannot be *broadened* to cover refractory bricks that function as MAC bricks and are termed MAC bricks by the industry did not purport to *narrow* the *Orders*' scope with respect to refractory bricks

that do not function as MAC bricks and are not termed MAC bricks by the industry. The Trade Court's contrary view should be rejected.

**B.    The Trade Court Nullified the *Orders* by Making Potentially All MCBs Out of Scope.**

In addition to rewriting *Fedmet I*, the Trade Court's erroneous ruling guts the *Orders*' effectiveness by dramatically narrowing their scope and making it easy for MCB importers to avoid payment of substantial AD/CVD duties.

*Every* MCB in the record includes at least some alumina. *See*, *e.g.*, Appx1014 n.23 and Appx1903 (showing Fedmet's Pinnacle brand bricks contain "0.2–0.5 percent" alumina); Appx1284 (showing those Pinnacle bricks are "marketed . . . as an MCB"). Nobody in this case has ever suggested that MCBs with zero alumina even exist or that trace amounts of alumina could not easily be added to MCBs during production without impacting any performance requirements. This means that every MCB in the record, and potentially all MCBs, would be out of scope under the Trade Court's ruling. It cannot be that orders expressly targeting "MCBs" do not cover any MCBs at all.

Moreover, any importers whose MCBs do not already include alumina could avoid duties by simply adding small amounts of alumina

to their products. Doing so would not impact product performance, as no MCB applications require 100% alumina-free bricks. Contrary to the Trade Court's assumption, the *Fedmet I* panel majority never "rejected [this] concern." Appx15 n.9. They had no need to address it because, on their view, importers would have needed to add "'significant'" amounts of alumina (not merely trace amounts insufficient to form spinel) to evade the *Orders*. *Fedmet I*, 755 F.3d at 917.

The Trade Court also wrongly concluded that "the Tariff Act's circumvention provisions" sufficiently protect against these concerns. Appx23–Appx24 (citing 19 U.S.C. § 1677j(c)(1); 19 C.F.R. § 351.226(j)). The circumvention provisions are not a crutch for propping up a faulty scope ruling. Those provisions can only be sensibly applied once the scope is correctly applied. Until this Court addresses whether the Trade Court's decision is correct, a circumvention case arguably would be premature.

The Trade Court's reading of *Fedmet I*, in short, would gut the effectiveness of the *Orders*. MCBs either already contain trace amounts of alumina—or could easily do so. This Court should not endorse a view that creates a gaping loophole in the *Orders*.

*          *          *

Based on its erroneous view of the "governing *Fedmet I* standard," the Trade Court vacated and remanded, without resolving any of the testing methodology issues that were at the core of the parties' dispute. *See* Appx16–Appx18. Accordingly, if the Court rejects the Trade Court's view (as it should), it should vacate the decision below and remand with instructions to the Trade Court to resolve the parties' remaining disputes on testing methodology. Issuing a decision before August 2026 also would minimize the risk that importers like Fedmet will harm domestic MCB producers by flooding the market with MCBs with trace amounts of alumina at unfairly traded (and injurious) prices.

## CONCLUSION

For the reasons set forth above, Appellant respectfully requests that the Court issue a decision at its earliest convenience before August 2026, vacate the decision below, and remand with instructions to resolve Fedmet's remaining challenges to Commerce's original determination.

Respectfully submitted,

*/s/ J. Michael Taylor*
J. Michael Taylor
 *Counsel of Record*
Ashley C. Parrish
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
jmtaylor@kslaw.com

*Counsel for Magnesia Carbon*
*Bricks Fair Trade Committee*

December 10, 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief:

(i) complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 6,292 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in 14-point Century Schoolbook font.

Date: December 10, 2025

*/s/ J. Michael Taylor*
J. Michael Taylor

*Counsel for Magnesia Carbon Bricks Fair Trade Committee*

# ADDENDUM

**Slip Op. 24-136**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

————————

**Court No. 23-00117**

————————

FEDMET RESOURCES CORPORATION,

*Plaintiff,*

v.

UNITED STATES,

*Defendant*,

and

MAGNESIA CARBON BRICKS
FAIR TRADE COMMITTEE,

*Defendant-Intervenor.*

————————

Before: M. Miller Baker, Judge

**OPINION**

[The court remands to Commerce for further proceedings.]

Dated: December 12, 2024

*R. Will Planert*, *et al.*, Morris, Manning & Martin LLP, Washington, DC, on the briefs for Plaintiff.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Reginald T. Blades*, Assistant Director; and *Antonia R. Soares*, Senior Trial Counsel, Commercial Litigation

Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the briefs for Defendant. Of counsel on the briefs was *K. Garrett Kays*, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the briefs for Defendant-Intervenor.

   *Baker*, Judge: An importer of refractory bricks—heat-resistant masonry used to line blast furnace walls—challenges the Department of Commerce's determination that certain of its blocks fall within antidumping and countervailing duty orders. The court holds that the agency erred as a matter of law and remands for reconsideration under the correct legal standard.

                                    I

   The Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, directs U.S. Customs and Border Protection to open an investigation after receiving an allegation that "reasonably suggests" an importer has "eva[ded]" an antidumping or countervailing duty order. *See id.* § 1517(a)(3), (b)(1)–(2). The statute defines "evasion" as the entry of goods through any material false statement or omission that reduces or avoids such duties. *See id.* § 1517(a)(5)(A).

If Customs "is unable to determine whether the merchandise at issue is covered" by the order, it must refer that question to Commerce. *Id.* § 1517(b)(4)(A)(i). The latter, in turn, "shall" make such a determination and communicate the results to the former. *Id.* § 1517(b)(4)(B). As relevant here, the Department may conduct this inquiry by applying the same regime it uses in making a scope ruling. *See* 19 C.F.R. § 351.227(f).

What is that? "Given the realities in the marketplace and everchanging varieties of merchandise, questions frequently arise as to whether a particular product is subject to or falls within the scope" of an antidumping or countervailing duty order. *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1315 (Fed. Cir. 2024) (citing 19 C.F.R. § 351.225(a)). By regulation—the statute provides no such mechanism—a producer, importer, or other interested party uncertain whether an order covers a commodity may ask Commerce for a ruling to clarify the decree's terms. *See* 19 C.F.R. § 351.225(c)(1).[1]

Upon receiving such a request, the Department will open a "scope inquiry." 19 C.F.R. § 351.225(a).[2] If it

---

[1] This device is roughly analogous to the procedure by which a party uncertain of its rights or obligations may seek a declaratory judgment in federal court. *See* 28 U.S.C. § 2201.

[2] It may also self-initiate such an inquiry. *See id.* § 351.225(b).

finds that the order's relevant language, "including the descriptions of merchandise expressly excluded . . . , is dispositive," it "may make its determination" based on that wording alone. *Id*. § 351.225(k)(1). In the agency's "discretion," it "may" also consider four "primary interpretive sources." *Id*. § 351.225(k)(1)(i). Those are "descriptions" of the product in the petition and investigation giving rise to the order, *see id*. § 351.225(k)(1)(i)(A), (B); its "previous or concurrent determinations . . . including prior scope rulings" bearing on the order or "other orders with same or similar language," *id*. § 351.225(k)(1)(i)(C); and International Trade Commission decisions "pertaining to the order," *id*. § 351.225(k)(1)(i)(D).[3]

---

[3] In fixing the scope of an order, Commerce "may also consider [certain] secondary interpretive sources"—materials not identified in subparagraph (k)(1)(i) of the regulation. *Id*. § 351.225(k)(1)(ii). "[I]n the event of a conflict between these secondary interpretive sources and the primary interpretive sources under [sub]paragraph (k)(1)(i)," the latter "will normally govern in determining whether a product is covered by the scope of the order at issue." *Id*. If the Department determines that the sources under paragraph (k)(1) "are not dispositive," it must consider various enumerated factors. *Id*. § 351.225(k)(2)(i)(A)–(E). Those criteria are in turn subject to their own hierarchy. *See id*. § 351.225(k)(2)(ii).

II

A

In 2009, Resco Products, Inc., a domestic producer, petitioned Commerce to open antidumping and countervailing duty investigations of "imports of certain magnesia carbon bricks" (MCBs) from China and Mexico. *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 914 (Fed. Cir. 2014) (*Fedmet I*). In due course, the Department imposed such duties. *See* 75 Fed. Reg. 57,257 (antidumping); 75 Fed. Reg. 57,442 (countervailing) (collectively, the orders).

Fedmet, a "domestic importer of refractory bricks and other products used in the steelmaking industry," *Fedmet I*, 755 F.3d at 916, then requested a scope ruling that the orders did not cover its magnesia alumina carbon bricks (MAC bricks). The company contended that "significant amounts" of alumina in those products—"8 to 15 percent"—"result in 'distinct properties'" that distinguish them from in-scope MCBs. *Id.* at 916–17.

After agency proceedings and litigation in this court in which Resco participated, the Federal Circuit agreed with Fedmet. *See id.* at 919–23. The court of appeals held that the sources identified in what is now 19 C.F.R. § 351.225(k)(1)(i)[4] "unequivocally confirm that [the importer's] MAC bricks are not within the

_____

[4] Commerce amended the regulation in 2021.

scope of the orders." *Fedmet I*, 755 F.3d at 919. It reasoned that the petitioner repeatedly "disclaim[ed] coverage of all MAC bricks in general." *Id*. Moreover, both Commerce and the Commission reiterated "that the underlying investigations did not extend to MAC bricks." *Id*.

In response to the contention that "the (k)(1)[(i)] sources identify no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick," *id*. at 921 (emphasis added), the Federal Circuit reckoned that

> [t]he public—including domestic importers like Fedmet—is entitled to rely on the multiple statements in the (k)(1)[(i)] sources disclaiming coverage of MAC bricks. To the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or "cut[-]off point" when asked to be more specific.

*Id*. Doubling down on this theme, the court of appeals emphasized that "the (k)(1)[(i)] sources do not mention, much less make a distinction, between so-called 'low-alumina' and 'high-alumina' bricks." *Id*. at 922. Instead, those sources made "clear statements that *all* MAC bricks were excluded from the scope of the underlying investigations." *Id*. (emphasis in original). This is true "[e]ven if, in fact, MCBs do overlap to some extent with MAC bricks," as the orders "are limited to only 'certain'" of the former. *Id*. at 922 n.7.

On remand, Commerce determined that the company's MAC brick was "8 to 15 percent . . . alumina" and thus out-of-scope. Appx02125. It limited its ruling to Fedmet's Bastion brand and stated that it did not intend to "address all" products characterized as MAC bricks because on the record before it "there [was] no apparent industry standard" for defining them. Appx02125–02126.

That victory only bought Fedmet an armistice, rather than peace. In 2019, it found itself accused of evasion by the Magnesia Carbon Bricks Fair Trade Committee. This ad hoc group of domestic producers (including Resco) alleged that the importer unlawfully characterized MCBs from China as MAC bricks. Appx01048–01049. Customs launched an investigation and found Fedmet guilty as charged. Appx01049.

The company challenged that finding in a new round of litigation in this court. *See Fedmet Res. Corp. v. United States*, Ct. No. 21-248, ECF 6 (complaint). The government beat a hasty retreat and sought voluntary remand, which the court granted. *See* Case 21-248, ECF 38. When the time arrived for Customs to file its redetermination, the government asked for a stay. *See* Case 21-248, ECF 39. It explained that the agency could not determine whether the orders covered Fedmet's bricks and intended to punt the question to Commerce. *Id.*

Customs then did just that.[5] Appx01048–01053. Its referral reported test results for eleven Fedmet brick samples "from four different [agency] labs using multiple testing methods." ECF 41, at 10; *see also* Appx01050 (test results). The Department, in turn, opened a scope inquiry. *See* 87 Fed. Reg. 43,238.

In that proceeding, Commerce explained that "[a]lumina *is* the defining component" of MAC bricks. Appx01014 (emphasis added). It observed that on two prior occasions it had "consider[ed] the alumina content necessary" to constitute such a product. Appx01015. On remand from *Fedmet I* in 2015, it found that the Bastion brand contained at least "eight percent alumina" and was therefore an out-of-scope MAC brick. *Id*. And two years later, in its *S&S Refractories* ruling,[6] it similarly concluded that a brick with "at least five percent added alumina" was also out-of-scope. Appx01015. Taken together, the two decisions "established that refractory bricks containing *a*

---

[5] The court stayed Case 21-248 pending Commerce's resolution of that referral. *See* ECF 44.

[6] *S&S* was a scope proceeding that concluded in mid-2017. *See* Memorandum from Edward C. Yang to Gary Taverman, *Certain Magnesia Carbon Bricks from the People's Republic of China and Mexico: Final Scope Ruling—S&S Refractories*, Agency Nos. A-201-837, A-570-954, C-570-955 (Dep't Commerce June 7, 2017). Excerpts from that ruling appear at Appx02032–02033.

*threshold amount* of alumina" (five percent) are MAC bricks. *Id*. (emphasis added).

The Department then added a qualifier: "[T]he alumina content requirement is based on the state of the brick upon importation." *Id*. *S&S* "explicitly stated that the alumina must be 'added,' *i.e.*, deliberately present in the brick through the production process (rather than subsequently developed through oxidation in the testing process)." *Id*. This distinction is "critical[ ]," *id.*, because "[r]efractory bricks sometimes contain small amounts of aluminum . . . as an antioxidant, which can be converted to alumina . . . in the course of testing," Appx01014 n.26 (quoting Fedmet's comments). Alumina resulting from testing "does not impart the same characteristics or performance to [a] brick[ ]" and thus could not be "considered part of [its] chemical make-up." Appx01015. Thus, it is vital "to determine the content of alumina as it exists in the brick as it was sold and imported, *i.e.*, prior to any oxidation of aluminum caused by exposure during testing." *Id*.

Having so found, Commerce then considered whether the eleven brick samples discussed in the four reports Customs provided "have the threshold amount of alumina to be considered outside the scope of the orders"—five percent. Appx01016. Of those, the former found one definitive: Report 0826, which used x-ray diffraction (XRD) testing on two samples. Those tests showed they contained some alumina, but less than five percent. *See* Appx01017–01018. The Department

thus found those bricks were *in*-scope. Appx01018. "Because this test provides the alumina content . . . as it exists" at the time of "sale and importation," the report "contain[ed] sufficient information" to allow a finding "as to whether [the samples] constitute MAC bricks." *Id.*

Commerce found the other three test results indeterminate. Appx01018–01019. Report 0430 revealed that all four samples were more than five percent alumina. *See* Appx01050. The Department discounted those results, however, explaining that they derived not from a "direct test" for that substance, but from a post-hoc assumption that such content was the residual after subtracting the measured levels of magnesia and carbon from 100 percent. *See* Appx01018.[7] Because the samples presumably also contained *other* substances beyond the trinity of magnesia, carbon, and alumina, Customs needed to address whether it is "appropriate to attribute the entire content of the brick that is not either magnesia or carbon to alumina." Appx01018.

The Department observed that although the alumina content for the samples in Reports 1030 and 1071 exceeded five percent, *see* Appx01050, those results derived from x-ray fluorescence (XRF) testing. Appx01018. That procedure "cause[s] oxidization of

---

[7] According to Fedmet, these results derived from XRD testing. *See* ECF 37-1, at 16–17.

the . . . samples," Appx01016, meaning it converts aluminum to alumina, Appx01015 n.30. Because that method did not test for the presence of alumina at the time of importation, but rather changed the bricks' nature, Commerce would not rely on it to determine whether the orders covered the five samples in those reports. Appx01018.

Both Reports 1030 and 1071 also included the results of XRD testing approved by the Department, but those tests only identified "the *presence* of certain compounds and elements" within the samples, including alumina. *Id.* (emphasis added); *see also* Appx01111 (Report 1030: "The samples displayed reliable peaks for Magnesium Oxide, *Aluminum Oxide* [alumina], and Carbon.") (emphasis added); Appx01170 (Report 1071, same). They "did not include figures relating to the *proportion*" of those substances. Appx01018 (emphasis in original).

In short, Commerce found that the orders covered two of the eleven brick samples because although they contained added alumina, they didn't satisfy the five-percent standard announced in *S&S. Id.* For the other nine, the test results provided by Customs were "indeterminate." Appx01019. And while the former agency disclaimed "direct[ing]" the latter "to use a particular testing methodology for determining alumina content," *id.*, it noted "that the test must reasonably reflect the composition of the brick as sold/imported," *id*. At any rate, "[w]hether certain tests or estimation

strategies can provide accurate results is an assess-
ment that [Customs] is best positioned to make." *Id*.
As to those nine samples, then, the Department
punted the scope question back to Customs.[8]

## B

Kicking off yet another round of litigation (the
third, for those keeping count), Fedmet filed this suit
under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (a)(2)(B)(vi)
to challenge the Department's final determination in
the covered-merchandise referral. ECF 18, ¶ 2. The
Committee intervened in support of the government.

---

[8] After receiving Commerce's response, Customs filed its
remand redetermination in the related EAPA action. *See*
Case 21-248, ECF 52. The latter agency stated that it "con-
ducted additional laboratory testing" on the nine refractory
brick samples that the former found indeterminate. *Id*. at
9. That (XRD) testing showed all contained alumina. *Id*. at
19. Applying the Department's five-percent standard, Cus-
toms decided that seven of the nine were in-scope because
their alumina content did not meet that threshold. *Id*. The
other two exceeded it and thus were out-of-scope. *Id*. Based
on those findings, the latter agency concluded that Fedmet
"entered covered merchandise . . . through evasion." *Id*. The
company thus had the "burden . . . to show" by XRD testing
or any other method able to measure "alumina content at
the time of importation . . . that its entries contain non-
subject MAC bricks with the chemical composition similar"
to the two samples that passed muster. *Id*.

The parties to Case 21-248 then requested, and the court
granted, a stay of that proceeding pending "a final and con-
clusive disposition" of this case. ECF 61.

Ct. No. 23-00117                                    **Page 13**

ECF 25. The importer moved for judgment on the agency record. ECF 37; *see also* USCIT R. 56.2. The government (ECF 41) and the Committee (ECF 42) opposed, and Fedmet replied (ECF 46).

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The court has jurisdiction under 28 U.S.C. § 1581(c).

## III

In effect, Fedmet asserts two main arguments. First, Commerce applied the wrong legal standard and in so doing unlawfully expanded the orders' scope. ECF 37-1, at 25–38. Second, and in any event, substantial evidence does not support the Department's application of that standard here. *Id.* at 38–51. The court considers these in turn.

## A

Fedmet attacks Commerce's requirement—announced in *S&S*—that to fall outside the orders, a refractory brick must contain at least five percent added alumina. *See id.* at 28–29. The company contends that the Federal Circuit "already rejected" such a demarcation based on Resco's "fail[ure] to provide a technical definition or 'cut[-]off point'" when asked to be more specific." *Id.* at 29 (quoting *Fedmet I*, 755 F.3d at 921).

Observing that the Department cannot enlarge the scope of antidumping and countervailing duty orders, *see id.* (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002)), the importer argues that the agency's five-percent standard is unlawful under *Fedmet I*, *id.*

The government's response is to try to change the subject. *See* ECF 41, at 22–24. It points to 19 C.F.R. § 351.225(k)(1)(i)(C), which authorizes the Department to consider "prior scope rulings" bearing on an antidumping or countervailing duty order. Here, that includes the agency's earlier determinations in the *Fedmet I* remand proceeding and in *S&S*, but the government's argument begs whether those decisions are consistent with the Federal Circuit's opinion.

For its part, the Committee dares to confront *Fedmet I*. It argues that the court of appeals neither addressed "what it is to be a 'MAC brick' in the first place," ECF 42, at 7, nor "opine[d] upon where a line might be drawn in terms of alumina content," *id.*

Those points are correct, but they're also irrelevant. The issue before the Federal Circuit was not what *is* a MAC brick, but whether the *orders covered* the importer's product, which contained added alumina. As to *that* question, *Fedmet I*'s "reasoning—its *ratio decidendi*" that gives it "life and effect in the disposition of future cases," *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1345 (CIT 2023) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020))—is dispositive.

It teaches that the addition of *any* alumina to an MCB takes it outside the orders, which "are limited to only 'certain' MCBs." *Fedmet I*, 755 F.3d at 922 n.7. That's because the relevant sources "*do not mention, much less make a distinction*[ ] *between*[,] *so-called 'low-alumina' and 'high-alumina' bricks.*" *Id.* at 922 (emphasis added). And while "MCBs and MAC bricks [may] in fact overlap to some degree, *the overlap was surrendered by Resco's failure to provide a technical definition or 'cut*[-]*off point' when asked to be more specific.*" *Id.* at 921 (emphasis added).

Under this rationale, which binds Commerce as much as this court, the agency had no power on remand in *Fedmet I* or in *S&S* to expand the scope of the orders to include *low*-alumina bricks—for better or worse, they're not covered, whether characterized as MCBs or MAC bricks.[9] "No cut-off point" for added alumina means *no* cut-off point.

---

[9] The dissent in *Fedmet I* lamented that the "majority leaves the Orders open to manipulation. Rather than paying the antidumping and countervailing duties on MCBs, importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs." 755 F.3d at 925 (Wallach, J.). The Committee echoes that jeremiad. *See* ECF 42, at 7 (noting that under Fedmet's reading of the Federal Circuit's decision, "MCBs containing only trace amounts of alumina" can masquerade as MAC bricks). The panel majority, however, considered and rejected that concern.

Ct. No. 23-00117                                      **Page 16**

In sum, the Department erred as a matter of law in imposing its five-percent test. Under *Fedmet I*, the orders do not cover MCBs with *any* added alumina. That mistake, of course, requires a remand. The court nevertheless must now turn to the importer's challenge to the agency's application of its (erroneous) legal standard, as the resolution of that dispute will inform the administrative proceedings to follow.

B

As described above, Customs provided the Department with four reports regarding the alumina content of eleven samples of Fedmet's refractory bricks. Three of them (encompassing seven samples) disclosed the presence of added alumina using the Department's favored XRD test. *See* Appx01111 (Report 1030); Appx01170 (Report 1071); Appx01234, Appx01239–01240 (Report 0826).[10] Under the governing *Fedmet I*

---

[10] Fedmet challenges Commerce's refusal to accept the *XRF* results for the samples in Reports 1030 and 1071, but the Department reasonably explained why it found them distorted. As a matter of common sense, whether an order covers a given product must be determined based on the item as it existed on the date of importation, rather than after some later alteration or modification. It's undisputed here that the XRF test itself creates alumina through oxidation and thereby changes the brick's chemical composition.

In any event, the *XRD* testing approved by Commerce detected—but did not measure in percentage terms—"the *presence* of certain compounds and elements," including

standard, those seven samples—even if they are otherwise MCBs—are "not covered by the orders" because they contain added alumina. 755 F.3d at 922.

Although Report 0430 also disclosed the presence of a certain percentage of added alumina, Commerce discounted this finding since it was "not the result of any direct test for" that substance. Appx01018. The Department explained that the estimated percentage might not be correct because it failed to account for other material potentially in the sample. *Id*. Thus, it could not determine "whether the bricks in Report 0430 are covered." *Id*.

Fedmet generally attacks Commerce's exercise of independent judgment in evaluating the test results forwarded by Customs. *See* ECF 37-1, at 45–51. The importer, however, cites no authority for this proposition, and the court is aware of none. In directing the Department to resolve covered merchandise referrals

———————————————

alumina, in those samples. Appx01018 (emphasis in original). Under *Fedmet I*, the relative proportion of alumina in an MCB isn't material because the orders do not cover "low-alumina" bricks.

Moreover, the more recent XRD tests conducted by Customs on redetermination in Case 21-248 confirmed that the samples in Reports 1030 and 1071 contain alumina. *See* note 8. This time, however, as required under Commerce's (erroneous) legal standard, the XRD testing measured the relative proportion of that substance. *See* Case 21-248, ECF 52, at 16.

Ct. No. 23-00117                                   **Page 18**

from Customs, *see* 19 U.S.C. § 1517(b)(4)(B), Congress
necessarily delegated to the former authority to review
de novo materials received from the latter. And Fed-
met has offered no reasons why Commerce's analysis
of Report 0430 is deficient on its own terms or other-
wise "failed to consider an important aspect of the
problem." *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State
Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

That said, here the Department applied the wrong
legal standard—its five-percent alumina test—in eval-
uating the samples in Report 0430. On this record, it's
unclear whether it would have reached the same con-
clusion if it had used the *Fedmet I* benchmark of any
added alumina. It must do so on remand.[11]

\*    \*    \*

For the reasons explained above, the court remands
to Commerce with instructions that it reconsider its
decision as to all 11 samples using the *Fedmet I* metric.
Under that standard, the orders do not cover MCBs
containing *any* added alumina—such products are
MAC bricks as far as those orders are concerned.

Dated:  December 12, 2024        /s/ *M. Miller Baker*
        New York, NY             Judge

---

[11] Alternatively, in its discretion Commerce may simply in-
struct Customs to apply the *Fedmet I* standard to the XRD
retesting of the samples in Report 0430 described in the
latter agency's redetermination. *See* note 8.

**Slip Op. 25-136**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

————————

**Court No. 23-00117**

————————

FEDMET RESOURCES CORPORATION,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

MAGNESIA CARBON BRICKS
FAIR TRADE COMMITTEE,

*Defendant-Intervenor*.

————————

Before: M. Miller Baker, Judge

**OPINION**

[Sustaining the Department of Commerce's redetermination made under protest in a covered-merchandise inquiry.]

Dated: October 9, 2025

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the comments for Defendant-Intervenor.

*Antonia R. Soares*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of

Justice, Washington, DC, on the comments for Defendant. Of counsel for Defendant was *Charlie Chung*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*R. Will Planert*, *et al.*, Morris, Manning & Martin LLP, Washington, DC, on the comments for Plaintiff.

*Baker*, Judge: This case involving the Department of Commerce's determination in a covered-merchandise inquiry that antidumping and countervailing duty orders cover certain refractory bricks returns following the remand ordered in *Fedmet Resources Corp. v. United States*, Slip Op. 24-136, 2024 WL 5088294 (CIT 2024) (Remand Opinion).[1] For the reasons explained below, the court sustains the agency's redetermination made under protest.

## I

The Remand Opinion held that under the rationale of *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 914 (Fed. Cir. 2014) (*Fedmet CAFC*), Commerce's covered-merchandise response to Customs and Border Protection in a related Enforce and Protect Act (EAPA) proceeding unlawfully expanded the scope of the orders. Remand Op. at 14–16, 2024 WL 5088294, at \*\*5–6. The orders are limited to "*certain* . . . magnesia carbon bricks" (MCBs) from China and Mexico. 75 Fed. Reg. 57,257 (antidumping); 75 Fed. Reg. 57,442 (coun-

---

[1] The court assumes the reader's familiarity with that decision.

tervailing) (emphasis added). The Department ruled that Fedmet's blocks that otherwise satisfy the orders' technical specifications and *also* include added alumina are covered so long as such content is *less than* "'a threshold amount' . . . (five percent)." Remand Op. at 8–9, 2024 WL 5088294, at *3 (quoting Appx01015). According to the agency, MCBs with alumina content that meet or exceed that benchmark are magnesia alumina carbon bricks (MAC bricks) and thus out-of-scope. *Id.*

In this court's reading, *Fedmet CAFC* rejected any such demarcation. *See* Remand Op. at 13–16, 2024 WL 5088294, at **5–6. Instead, "the orders do not cover MCBs with *any* added alumina." *Id.* at 16, 2024 WL 5088294, at *6 (emphasis in original). Under protest, the agency conformed its response to the Remand Opinion. *See* Appx02828.

## II

The Magnesia Carbon Bricks Fair Trade Committee—a group of domestic producers that includes the petitioner in the underlying investigations, Resco Products, Inc.—now seeks reconsideration of the Remand Opinion. *See* ECF 65. It argues at length that the court misinterpreted *Fedmet CAFC*. *Id.* at 8–26.

The court is unpersuaded. According to Commerce, "[a]lumina *is* the defining component" of MAC bricks. Appx01014 (emphasis added). *Fedmet CAFC* observed that in the underlying investigations, Resco "disclaim[ed] coverage" of such products. 755 F.3d at 921. Thus, its failure to identify any "*'cut-off point' at which*

*addition of alumina to an MCB transforms it into a MAC brick* [did] not result in ambiguity." *Id.* (emphasis added). The public, including Fedmet, was "entitled to rely on" Resco's disclaimers of coverage of MAC bricks. *Id.* And "[t]o the extent that MCBs and MAC bricks do in fact overlap to some degree, *the overlap was surrendered by Resco's failure to provide a technical definition or 'cut[-]off point' when asked to be more specific.*" *Id.* (emphasis added).

Based on Resco's representations, "Commerce and the Commission determined not to go beyond the 'name' of MAC bricks, not to provide any *chemical composition or technical specifications*" for those products, "and not to adopt an explicit exclusion" for them "because it was unnecessary." *Id.* (emphasis added). In a later scope determination, the Department could not "depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name.'" *Id.* at 922. Thus, the Federal Circuit rejected the agency's attempt to expand the orders' scope to include "low-alumina" bricks. *Id.* Neither the petitioner's representations nor the scope language adopted by Commerce "mention[ed], much less ma[d]e [a] distinction, between so-called 'low-alumina' and 'high-alumina' bricks." *Id.*

That reasoning applies with equal force here. The Department cannot now go beyond "the 'name' of MAC bricks" and supply the "chemical composition" (five percent added alumina) or "technical specification[]"

(functionality[2]) requirements that Resco failed to provide and that the agency failed to adopt. *Id.* at 921. If an MCB contains added alumina, for purposes of *these orders* it is a MAC brick, as there is "no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick." *Id.* "[L]ow-alumina bricks"—regardless of *how* low—are not covered by the orders, *id.* at 922, as such products are literally magnesia *alumina* carbon bricks *in name*.

Resco "disclaim[ed] coverage for *all* MAC bricks *in general*," *id.* at 919 (emphasis added), and the agency took the petitioner at its word. For better or worse, the Federal Circuit held that it and other domestic producers must live with the consequences of that choice.

Judge Wallach identified one of those potential consequences. *See id.* at 925 (Wallach, J., dissenting) (lamenting that under the majority's decision, "importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs"). But Resco and other domestic producers may not be without recourse in that scenario.

As Fedmet observes, *see* ECF 46, at 13, the Tariff Act's circumvention provisions allow interested parties to seek relief when merchandise is outside the scope of antidumping and countervailing duty orders

---

[2] "[A]lumina facilitates the formation of fused magnesia spinel when MAC bricks are heated to steelmaking temperatures, which prevents cracks and decreases chemical attack by promoting permanent expansion and closing pores in the bricks." *Fedmet CAFC*, 755 F.3d at 917. This functionality "distinguish[es] MAC bricks from MCBs." *Id.*

due to "alter[ations] in form or appearance in minor respects." 19 U.S.C. § 1677j(c)(1); *see also* 19 C.F.R. § 351.226(j)[3]; *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332, 1338 (Fed. Cir. 2016) ("The purpose of minor alteration anticircumvention inquiries is to determine whether articles not expressly within the literal scope of a duty order may nonetheless be found within its scope as a result of a minor alteration to merchandise covered in the investigation."); *Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283, 1295 (CIT 2019) ("This reasonably includes an intent that the merchandise as altered would have been included in the scope of the investigation if Commerce and the ITC *had had reason to consider it* at the outset of the investigation.") (emphasis added).

In view of Resco's blanket disclaimers, the agencies arguably had no reason to consider including low-alumina MAC bricks that lack spinel-generating functionality in the investigation's scope. Thus, it and the other domestic producers in the related EAPA proceeding before Customs—which in turn sparked the

---

[3] In relevant part, this regulation provides that "[u]nder section 781(c) of the Act, the Secretary may include within the scope of an antidumping or countervailing duty order articles altered in form or appearance in minor respects. The Secretary may consider such criteria including, but not limited to, the overall physical characteristics of the merchandise (including chemical, dimensional, and technical characteristics), the expectations of the ultimate users, the use of the merchandise, the channels of marketing and the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j).

Ct. No. 23-00117                                          **Page 7**

covered-merchandise inquiry giving rise to this case—
may simply be barking up the wrong tree.

*    *    *

The court follows its best reading of binding prece-
dent and declines the Committee's request to change
course. It therefore sustains Commerce's redetermina-
tion. Judgment will issue. *See* USCIT R. 58(a).

Dated:  October 9, 2025        /s/ *M. Miller Baker*
        New York, NY          Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| FEDMET RESOURCES CORPORATION,<br><br>     *Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>     *Defendant,*<br><br>and<br><br>MAGNESIA CARBON BRICKS<br>FAIR TRADE COMMITTEE,<br><br>     *Defendant-Intervenor.* | Ct. No. 23-00117-MMB |

**JUDGMENT**

For the reasons stated in Slip Opinion 25-136 (ECF 73), the court sustains the Department of Commerce's redetermination (ECF 58).

Dated:     October 9, 2025          <u>/s/ *M. Miller Baker*</u>
              New York, New York     M. Miller Baker, Judge