NON-CONFIDENTIAL VERSION

2026-1160

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**FEDMET RESOURCES CORPORATION,**

*Plaintiff-Appellee,*

**v.**

**MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE,**

*Defendant-Appellant,*

**UNITED STATES,**

*Defendant.*

**Appeal from the United States Court of International Trade
Case No. 1:23-cv-00117-MMB, Hon. M. Miller Baker**

## RESPONSE BRIEF OF PLAINTIFF-APPELLEE
## FEDMET RESOURCES CORPORATION

R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, N.W.
Suite 800
Washington, DC 20036

*Counsel to Fedmet Resources
Corporation*

March 23, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1160

**Short Case Caption** Fedmet Resources Corporation v. Magnesia Carbon Bricks Fair Trade Committee

**Filing Party/Entity** Fedmet Resources Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/23/2026

Signature: /s/ R. Will Planert

Name: R. Will Planert

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Fedmet Resources Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Taft Stettinius & Hollister LLP | Eugene Degnan | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES......................................................1

INTRODUCTION....................................................................3

STATEMENT OF THE ISSUES ON APPEAL....................................4

STATEMENT OF THE CASE.................................................4

   A.  The AD/CVD Investigation ........................................4

   B. The Fedmet Scope Ruling.........................................7

   C. The S&S Refractories Scope Ruling ...................................13

   D. Appellant's EAPA Allegation.......................................15

   E. Covered Merchandise Inquiry .....................................17

SUMMARY OF ARGUMENT ...............................................21

ARGUMENT .........................................................23

   A. *Fedmet I* Precludes The Imposition Of A Single
      Quantitative Cut-off...........................................25

   B. Commerce Was Not Justified In Giving Precedence
      To The Subsequent S&S Refractories Ruling.....................32

   C. The CIT Correctly Prevented Commerce's
      Implementation Of A Quantitative Cut-Off Point ..............35

CONCLUSION.......................................................43

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to federal circuit rules 25.1(d) and 25.1(e)(1)(b), counsel for plaintiffs-appellees has prepared a non-confidential version of its response brief from which it has redacted certain confidential information. Confidential information has been removed from pages 20 and 28 of the non-confidential version of this response brief.

The confidential material omitted from pages 20 and 28 of the non-confidential version of this response brief consists of confidential laboratory test result percentages.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Duferco Steel, Inc. v. United States,*
296 F.3d 1087 (Fed. Cir. 2002) ..........................................................43

*Fedmet Resources Corp. v. United States,*
70 F. Supp. 3d 1279 (Ct. Int'l Trade 2015)............................... *passim*

*Fedmet Resources Corp. v. United States,*
755 F.3d 912 (Fed. Cir. 2014), *reh'g denied,*
Ct. No. 13-1539, ECF 67 (Jan. 28, 2015).................................. *passim*

*Fedmet Resources Corp. v. United States,*
911 F. Supp. 2d 1348 (Ct. Int'l Trade 2013)............................. *passim*

*Star Pipe Prods. v. United States,*
463 F. Supp. 3d 1366 (Ct. Int'l Trade 2020)......................................33

*Tak Fat Trading Co. v. United States,*
396 F.3d 1378 (Fed. Cir. 2005) ..........................................................43

**Regulations**

19 C.F.R. § 351.225(f)(4).........................................................................34

19 C.F.R. § 351.225(k)(1)..........................................................................8

19 C.F.R. § 351.225(k)(2)..........................................................................8

**Statutes**

19 U.S.C. § 1673e(a)(2) ...........................................................................25

**Other Authorities**

*Certain Magnesia Carbon Bricks From Mexico and the
People's Republic of China: Antidumping Duty Orders,*
75 Fed. Reg. 57,257 (Dep't of Commerce Sept. 20, 2010) ....................6

*Certain Magnesia Carbon Bricks From the People's Republic of China: Countervailing Duty Order,* 75 Fed. Reg. 57,442 (Dep't of Commerce Sept. 21, 2010) ...................................................... 6

Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, from Barbara E. Tillman, Director, AD/CVD Operations, Office 6, "Certain Magnesia Carbon Bricks From the People's Republic of China and Mexico: Preliminary Scope Ruling - Fedmet Resources Corporation" (Dep't of Commerce Mar. 30, 2012) ............................ 42

Petition for Rehearing,
*Fedmet Resources Corp. v. United States,*
Ct. No. 13-1539, ECF 58 (Oct. 3, 2014) .......................... 10, 11, 29, 40

Order Granting Stay,
*Fedmet Resources Corp. v. United States,*
USCIT Ct. No. 21-00248, ECF 44 (June 7, 2022) ............................. 17

EAPA Remand Redetermination,
*Fedmet Resources Corp. v. United States,*
USCIT Ct. No. 21-00248, ECF 52 (Sept. 1, 2023) ............................. 20

Brief of Plaintiff-Appellant,
*Fedmet Resources Corp. v. United States,*
Ct. No. 13-1539, ECF 25 (Sept. 30, 2013) ......................................... 42

Reply Brief of Plaintiff-Appellant,
*Fedmet Resources Corp. v. United States,*
Ct. No. 13-1539, ECF 38 (Dec. 2, 2013) ............................................ 42

Brief of Plaintiff,
*Fedmet Resources Corp. v. United States,*
USCIT Ct. No. 23-00117, ECF 37-1 (Dec. 4, 2023) ........................... 42

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a)(1), Plaintiff-Appellee is aware that the United States filed an appeal from the same civil action or proceeding in the lower court, but that the United States' separate appeal, Ct. No. 26-1245, has been voluntarily dismissed. *See* ECF 25. Plaintiff-Appellee is not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(a)(2), counsel for Plaintiff-Appellee is aware that *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 21-00248, before the U.S. Court of International Trade ("CIT" or "Trade Court"), will be directly affected by the Court's decision in this case. That case, an appeal from the same Enforce and Protect Act ("EAPA") investigation that was the originating proceeding of the appeal before this Court, is stayed pending the final resolution of this action.

Counsel for Plaintiff-Appellee is aware that *Fedmet Resources Corp. v. United States*, Ct. No. 13-1539, previously before this Court, was an appeal of a different segment of the same antidumping and

countervailing duty ("AD/CVD") proceeding from which the appeal to the Trade Court was filed and concerns the same merchandise and similar legal issues as this appeal.

Counsel for Plaintiff-Appellee is not aware of any other case pending in this or any other court or agency that will directly affect or be directly affected by the Court's decision in this case.

## INTRODUCTION

This appeal is the latest chapter in a long-running effort by the petitioner in this case to bring within the scope of the AD/CVD orders on magnesia carbon bricks ("MCBs") from China products that were expressly excluded from the scope during the original AD/CVD investigation. In *Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) ("*Fedmet I*"), *reh'g denied*, Ct. No. 13-1539, ECF 67 (Fed. Cir. Jan. 28, 2015), this Court held that, because the petitioner excluded magnesia alumina carbon bricks ("MAC bricks" or "MACBs") from the scope, and the U.S. Department of Commerce ("Commerce") did not define the distinction between MAC bricks and MCBs other than by name, all MAC bricks, including Fedmet's MAC bricks, are outside the scope of the AD/CVD orders. *Fedmet I*, 755 F.3d at 921. Dissatisfied with this Court's decision, which the Trade Court found controlling in making its decision below, the petitioner now seeks to relitigate the Court's decision in *Fedmet I* with respect to the same merchandise. Given that this appeal concerns the same underlying legal issue and the same merchandise, this Court should, consistent with *Fedmet I*, affirm the decision of the Trade Court.

## STATEMENT OF THE ISSUES ON APPEAL

Whether the Trade Court correctly found that this Court's decision in *Fedmet I*, concerning the same underlying legal issue and the same merchandise, was controlling over whether Fedmet's MAC bricks are outside the scope of the MCB AD/CVD orders.

Whether the Trade Court correctly found that this Court's holding in *Fedmet I* that Commerce cannot impose a cut-off point for alumina with respect to MCBs and MAC bricks renders Commerce's subsequent establishment of a strict numerical cut-off point for alumina content for Fedmet's MAC bricks unlawful.

## STATEMENT OF THE CASE

The extensive history of this case bears directly on the legal issues in this action. As many aspects were misstated or omitted by the Appellant, this history is provided below.

### A. The AD/CVD Investigation

In July 2009 Resco Products, Inc. ("Resco"), presently a member of the Magnesia Carbon Bricks Fair Trade Committee ("MCBFTC"), the Appellant in this appeal, filed a petition that AD/CVD be imposed on MCBs from China. *See Fedmet I*, 755 F.3d at 914. MCBs were defined

4

as chemically bonded refractory bricks that are composed of 70 percent or more of magnesia and between trace amounts and 30 percent of carbon. *Id.*

There also existed a related, but distinct, type of refractory brick, known as MAC bricks, which are MCBs with added alumina. *See, e.g., id.* at 917. Like MCBs, MAC bricks are also chemically bonded refractory bricks that are composed of magnesia (often 70 percent or more) and carbon. *Id.* at 916. MAC bricks are distinguished from MCBs by the fact that, in addition to magnesia and carbon, MAC bricks contain aluminum oxide (known as alumina), while MCBs do not contain any alumina. *See id.* at 921.

Resco stated in its AD/CVD petition that the investigation covered only MCBs and that it did not intend to seek the imposition of AD/CVD duties on other types of refractory bricks, including MAC bricks:

> There are *several types of standard refractory bricks in addition to magnesia carbon, the subject of this petition.* Among the most important are fired magnesite, fired bauxite, magnesia dolomite and *magnesia aluminum carbon brick.* {sic} Each of these bricks possess certain unique properties, which make their use highly preferred, and even required, for certain uses in the lining of steel, ceramic, and other furnaces and holding vessels. The different types of bricks are not generally substitutable in a technical sense,

due to varying chemical and physical properties and wear characteristics.

*Id.* at 914 (emphasis added).

Shortly after Resco filed its petition, Commerce requested that Resco confirm how the scope language operated to exclude the other, non-covered refractory bricks referenced above, and to revise the scope language if necessary. *Id.* at 914-15. Resco responded that the scope focuses only on MCBs, and that no revision was needed to accomplish the exclusion of the specified out-of-scope bricks. *Id.* at 915.

Resco similarly distinguished MAC bricks and MCBs when testifying before the U.S. International Trade Commission. *Id.* Commerce published the Orders with substantially the same scope as proposed by Resco in its petition. *Certain Magnesia Carbon Bricks From Mexico and the People's Republic of China: Antidumping Duty Orders*, 75 Fed. Reg. 57,257 (Dep't of Commerce Sept. 20, 2010); *Certain Magnesia Carbon Bricks from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 57,442 (Dep't of Commerce Sept. 21, 2010) (collectively, the "Orders").

## B.     The Fedmet Scope Ruling

In May 2011, Fedmet requested a scope ruling at Commerce to confirm that its Bastion® line of MAC bricks, are, like other MAC bricks, outside the scope of the Orders. *Fedmet I*, 755 F.3d at 916-17. Fedmet described its Bastion® line of MAC bricks as containing "approximately 75 to 90 percent magnesia, 8 to 15 percent alumina (*i.e.* aluminium oxide), 3 to 15 percent carbon, and smaller amounts of silicon dioxide, calcium oxide, iron oxide and titanium dioxide," *id.*, and provided an example quality certificate showing the chemical properties on an oxidized-compound (*i.e.*, a calcined) basis.[1]

Resco opposed Fedmet's scope ruling request, arguing that there was no such thing as a MAC brick, and urging Commerce to "reject Fedmet's self-serving attempt unilaterally create this product by simply adding alumina to the mix." Appx02110. Resco claimed that Fedmet had "unilaterally created this so-called product and product name in order to specifically circumvent the scope of the orders." Appx02111.

---

[1] Comments of Plaintiff in Support of Remand, *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 23-00117, ECF 67 at 8 n.1 (July 17, 2025) (identifying the relevant quality certificate previously before this Court and Commerce in *Fedmet I* on the CIT record in *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 21-00248).

As a result of Resco's opposition, Commerce determined that the scope language was ambiguous as to whether MAC bricks were covered, even after considering primary sources (*i.e.*, (k)(1) sources), and relied on secondary sources (*i.e.*, (k)(2) sources)[2] to determine that Fedmet's bricks were within the MCB scope since, despite having added alumina, they contained at least 70 percent magnesia and some carbon. Fedmet appealed that decision to the CIT, which affirmed Commerce's decision, holding that "only *some* MACBs," referred to as "high-alumina" bricks, are excluded from the scope of the Orders. *Fedmet Resources Corp. v. United States*, 911 F. Supp. 2d 1348, 1354 (Ct. Int'l Trade 2013) ("*Fedmet I CIT I*"). Fedmet then appealed to this Court.

In *Fedmet I*, this Court reversed, holding that the primary, (k)(1) sources confirmed that the Orders do not cover MAC bricks. In so

---

[2] Commerce's regulations provide that in determining scope, it first takes into account the "initial investigation, and the determinations of the Secretary (including prior scope determinations). 19 C.F.R. § 351.225(k)(1) (2011) ("(k)(1) sources"). If the (k)(1) sources are not dispositive, Commerce will also consider: (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) (2011) ("(k)(2) sources").

holding, the CAFC emphasized Resco's role in defining the Orders to exclude MAC bricks:

> To put it simply, the question before this Court was asked and answered during the underlying investigations. Resco had an opportunity to clarify whether MAC bricks were included within the scope of the investigations, and it confirmed that they were not. In doing so, Resco chose to rely on industry terminology to continue to define the subject merchandise and the domestic like product. *At the urging of Resco, Commerce adopted this industry terminology and defined the scope of the orders in terms of "magnesia carbon bricks," with the understanding that other types of bricks such as MAC bricks would not be covered.*

*Fedmet I*, 755 F.3d at 920 (emphasis added).

The Court held that because Commerce "determined not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks because it was unnecessary," Commerce could not later "define non-subject merchandise more precisely than 'by name.'" *Id.* at 921-22. "{T}he fact that the (k)(1) sources identify no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick does not result in ambiguity" between subject MCBs and MAC bricks. *Id.* at 921. Rather, "{t}o the extent that MCBs and MAC bricks do in fact overlap to some degree,

the overlap was surrendered by Resco's failure to provide a technical definition or 'cut off point.'" *Id.* As a result, "{e}ven if, in fact, MCBs do overlap to some extent with MAC bricks, there would be no inconsistency between our interpretation of the (k)(1) sources and the orders because the latter are limited to only 'certain' MCBs." *Id.* at 922 n.7.

On that basis, this Court held "that the (k)(1) sources are dispositive of the question presented by Fedmet's scope ruling request. . . . Because Fedmet's bricks are MAC bricks, we hold that they are not covered by the orders." *Id.* at 922 (emphasis in original). That is, this Court confirmed that Fedmet's bricks are outside the scope of the Orders *because* they are MAC bricks, and all MAC bricks, *i.e.*, MCBs with added alumina, are outside the scope of the Orders. This Court therefore directed Commerce to grant Fedmet's original scope ruling request.

Following this Court's decision,[3] Appellant petitioned for rehearing and rehearing *en banc. See* Petition for Rehearing, *Fedmet I,*

---

[3] HarbisonWalker International, Inc. (formerly known as ANH Refractories Company) and Magnesita Refractories Company both participated in *Fedmet I* and, together with Resco, jointly filed the

Ct. No. 13-1539, ECF 58 (Oct. 3, 2014). Appellant stated that "*Fedmet I* held that any MCBs with alumina content are excluded from the orders' scope." *See id.* at 8. Appellant argued that this holding "create{ed} an improper loophole that leaves Commerce's AD/CVD orders open to manipulation." *See id.* at 14. The Court denied panel rehearing *per curiam*, and denied rehearing *en banc* with only one dissent. *Fedmet I*, Ct. No. 13-1539, ECF 67 (Fed. Cir. Jan. 28, 2015).

On remand following *Fedmet I,* Commerce found that MAC bricks were excluded from the scope of the Orders, noting that Fedmet's Bastion® line of MAC bricks were characterized by the presence of approximately 8 to 15 percent alumina, as well as approximately "3 to 15 percent carbon, 75 to 90 percent magnesia, as well as smaller amounts of silicon dioxide, calcium oxide, iron oxide, {and} titanium dioxide." Appx02123- Appx02124 (quoting Fedmet's Scope Ruling Request at 2) (alteration in original) (marks omitted). In so doing, Commerce expressly rejected a further request by Appellant to fix an absolute numerical cut-off for alumina by removing the word

---

petition for rehearing in *Fedmet I*. As these are the three member companies of MCBFTC, the Appellant in the instant appeal, we refer to them collectively herein as the "Appellant" when filing jointly.

"approximately," and limiting its scope determination to bricks with the exact chemical specifications and physical composition contained in Exhibit 1 of Fedmet's original scope ruling request. *See* Appx02124. Appellant also argued that Commerce should re-open the record to admit evidence about the appropriate testing protocols for measuring alumina content, but Commerce declined to do so. *See* Appx02124-Appx02125. Commerce expressly limited its scope ruling to Fedmet's MAC bricks because it found that there is no industry standard that defines the chemical composition of a MAC brick. *See* Appx02125-Appx02126.

The CIT sustained Commerce's remand redetermination. *Fedmet Resources Corp. v. United States*, 70 F. Supp. 3d 1279 (Ct. Int'l Trade 2015) ("*Fedmet I CIT II*"). The CIT summarized the instant Appellant's complaints as follows:

> Defendant-Intervenors insist that a remand is necessary for Commerce to remove the term "approximately" from the MACB definition and provide an "unambiguous, precise definition of the {MACBs} that are outside the scope of the antidumping and countervailing orders on {MCBs}." Additionally, Defendant-Intervenors contend that a remand is necessary for Commerce to re-open the record of the scope proceeding to solicit additional factual information on testing methodologies for assessing alumina content.

*Id.* at 1280 (alteration in original) (citation omitted). The CIT

found "{Appellant's} arguments unavailing { as t}he MACB

definition Commerce relied on in the Final Redetermination is

consistent with the definition the CAFC adopted in {*Fedmet I*},"

and "in in full compliance with the CAFC's decision in {*Fedmet I*}."

*Id.*

### C.    The S&S Refractories Scope Ruling

In June 2017, in response to another scope ruling request

concerning MAC bricks, Commerce reaffirmed that in accordance with

the decision of this Court in *Fedmet I*, MAC bricks are outside the scope

of the Orders. *See* Appx02131. However, Commerce, at Appellant's

urging, introduced the additional requirement that the MAC bricks of

the requester, S&S Refractories, LLC ("S&S Refractories"), met their

specified minimum alumina percentage, as tested via a particularly

laboratory testing methodology known as x-ray refraction ("XRD"),

thereby requiring that S&S Refractories' MAC bricks to meet a

minimum cut-off not considered by the *Fedmet I* court or adopted in the

Fedmet scope ruling that had been affirmed by the CIT on remand.

S&S Refractories had requested a scope ruling to confirm that certain MAC bricks it imported from Yingkou Dongming Mineral Products Co., Ltd., which S&S Refractories defined as containing at least 5 to 15 percent alumina, were excluded from the Orders. *Id.* In response to S&S Refractories' request, Appellant argued that the imported MAC bricks in the S&S Refractories ruling request should be excluded from the Orders only if the alumina content was measured using XRD. *See* Appx02135.

The Appellant contended that this methodology was preferred because some other testing methodologies involved calcination (heating) of the sample, a process that can result in the oxidation of any aluminum and the burning off of any carbon present in the sample. Appx01982. Aluminum is an ingredient that is sometimes included in MCBs in small amounts as an anti-oxidant. *See* Appx02032. In this manner, the Appellant renewed its position that *Fedmet I* was overbroad and that only testing methodologies that avoid oxidizing the aluminum should be allowed to evaluate the percentage alumina in a brick. *See* Appx01982-Appx01983. Accordingly, the Appellant argued that XRD testing, which does not involve oxidizing any aluminum that

14

may be present in the brick, should be required to establish that the S&S Refractories products contained the requisite 5 percent alumina for purpose of that scope ruling. *See* Appx01987.

In its final scope ruling for S&S Refractories, Commerce agreed and mandated that the alumina content of S&S Refractories' imported bricks be measured using XRD testing, and that the alumina minimum be met by added alumina. Appx02135. Fedmet was not a party to the S&S Refractories scope proceeding. However, Commerce expressly limited its final scope determination only to the specific products for which the ruling was requested, determining that the ruling "only applie{d} to Yingkou's BP-70A and BP-75A MAC bricks which are imported by S&S that contain at least 5 percent *added* alumina per the specifications provided in the request." *See* Appx02134 (emphasis in original). Commerce emphasized that it "limited our analysis to only those MAC bricks identified in the requestors' scope application and not all bricks designated as MAC bricks." *Id.*

### D.    Appellant's EAPA Allegation

With the S&S Refractories ruling in hand, on November 27, 2019, the Appellant filed an EAPA allegation with U.S. Customs and Border

15

Protection ("CBP"), alleging that Fedmet engaged in evasion of the Orders by importing subject MCBs from China and declaring them as non-subject MAC bricks. Appx01815. The Appellant claimed that pursuant to the S&S Refractories ruling, all MAC bricks must contain 5 percent or more alumina as measured using XRD to be outside the scope of the Orders. Appx01818 n.5.

During the EAPA investigation, Fedmet provided pre-importation physical and chemical composition testing reports for sample lots along with test results provided by an outside laboratory in the United States that confirmed Fedmet's bricks not only contained added alumina, but were within Fedmet's stated product parameters. *See, e.g.*, Appx02092, Appx02137-Appx02158. Unbeknownst to Fedmet, CBP also secretly tested the physical and chemical composition of eleven sample Fedmet bricks over the course of four laboratory tests. The details of these tests were not disclosed to Fedmet until August 30, 2022. Appx02717. Based on CBP's tests, and relying on the S&S Refractories scope ruling, CBP made an affirmative evasion determination as to Fedmet. Appx01759-01765.

On appeal at the CIT, Fedmet argued that CBP's evasion finding was in contravention of this Court's holding in *Fedmet I*. Appx02159-02230. Among other things, Fedmet argued that CBP's test results confirmed that the merchandise contained added alumina as required by *Fedmet I*. Rather than attempt to defend its evasion finding before the Trade Court, the United States requested a voluntary remand because CBP claimed to be "unable to determine whether the subject merchandise falls within the relevant antidumping and countervailing duty orders," and requested a stay of the EAPA appeal in order to make a covered merchandise referral to Commerce. Appx02234-02241. The CIT granted the motion, staying the remand of the EAPA appeal pending the results of Commerce's covered merchandise inquiry. Order Granting Stay, *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 21-00248, ECF 44 (June 7, 2022).

### E. Covered Merchandise Inquiry

On June 30, 2022, CBP made the merchandise referral to Commerce. Included with the referral were the detailed laboratory reports underlying CBP's test results, which to that point had not yet been disclosed to Fedmet or counsel. On July 20, 2022, Commerce

initiated a covered merchandise inquiry into whether the eleven bricks tested across the four laboratory tests are within the scope of the MCB Orders. Appx02681.

Fedmet's comments and submissions focused on the issues involved with the testing performed by CBP, the fact that the S&S Refractories ruling applied only to the specific products that were the subject of that scope ruling request, and that this Court already determined that all MAC bricks, as defined using standard industry terminology, were outside the scope of the Orders. *See, e.g.*, Appx02085-Appx02102. Fedmet also reminded Commerce that in its final Fedmet scope ruling Commerce had rejected Appellant's request to mandate that Fedmet or CBP follow a particular testing methodology to establish the composition of the bricks, Appx02402-Appx02403, and that Fedmet's suppliers test all of the bricks prior to importation and provide Fedmet with certificates of analysis. *See, e.g.*, Appx02101-Appx02102. Fedmet placed its own pre-importation test certificates for some of the bricks tested by CBP onto the record. Appx02389.

For its part, the Appellant continued to argue that the S&S Refractories ruling was controlling over Fedmet's merchandise, and

that only XRD testing could be used to determine the alumina content of refractory bricks for purposes of the Fedmet scope ruling. *See, e.g.*, Appx01787-Appx01790.

On April 27, 2023, Commerce made its final determination, mandating the use of a testing method that did not oxidize the sample, *i.e.*, XRD. Appx01036. Commerce also claimed that it needed to apply the S&S Refractories ruling to Fedmet's bricks to avoid inconsistent treatment of whether certain products are considered in or out of scope. Appx01034. Finally, Commerce dismissed the certificates of quality documenting the testing results conducted by the manufacturers because those documents do not specify the testing methodology, and also refused to credit a third-party laboratory report submitted by Fedmet during the course of the EAPA proceeding because it appeared to be the result of x-ray fluorescence ("XRF") testing. *Id.*

On June 8, 2023, Fedmet appealed Commerce's decision to the CIT in *Fedmet Resources Corp. v. United States*, USCIT Ct. No.23-00117. The Trade Court confirmed that, pursuant to the standard clarified by this Court in *Fedmet I*, the addition of any alumina to an MCB takes it outside of the scope of the orders on MCBs from China.

*Fedmet Resources Corp. v. United States*, Ct. No. 23-00117, Slip Op. 24-136 at 16, Appx00016 (Ct. Int'l Trade Dec. 12, 2024) ("*Fedmet II CIT I*"). The CIT further found that seven of the eleven tested samples had been found by CBP to contain added alumina and are therefore outside the scope of the orders on MCBs from China.[4] For the remaining four samples, for which updated test results were not on the record in the covered merchandise proceeding, the Trade Court held that the same standard must also be applied following XRD testing. *Id.* at 16-18. The CIT observed, cross-referencing the EAPA appeal before the same court, that CBP had already in the course of its voluntary remand conducted such XRD testing on those remaining four samples and had found the presence of added alumina. *Id.* at 12 n.8 (citing EAPA Remand Redetermination, *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 21-00248, ECF 52 at 19 (Sept. 1, 2023)).

---

[4] For these seven samples, CBP's test results detected the presence of alumina in all samples, ranging from **[ number ]** to as high as **[ number ]** depending upon the CBP laboratory and the testing methodology employed. Appx01050.

On March 12, 2025, Commerce made its remand redetermination in conformity with the Trade Court's instructions, Appx2828, and on October 9, 2025,the CIT affirmed Commerce's decision.

This appeal followed.

## SUMMARY OF ARGUMENT

Appellant's brief re-writes the *Fedmet I* decision. Appellant contends that the *Fedmet I* Court did not have occasion to impose a cut-off point at which the addition of alumina to a subject MCB transforms it into a non-subject MAC brick, and so the door is open for Commerce to do so, *i.e.*, to impose such a specific quantitative cut-off. But in *Fedmet I*, this Court precluded Commerce from imposing just such a cut-off because, it held, no cut-off point exists. As this Court explained, to the extent its holding results in overlap between MCBs and MAC bricks, that overlap was surrendered such that all such overlapping bricks would be considered non-subject MAC bricks for the purpose of the Orders. That is, if an MCB could be referred to as a MAC brick, *i.e.*, an MCB with added alumina, it would not be covered by the Orders, which only cover *certain* MCBs.

In the covered merchandise inquiry, Commerce nonetheless concluded that a subsequent scope ruling which adopted one importer's own self-declared cut-off point for its merchandise should be imposed on Fedmet's products. But the Fedmet scope ruling was *final* with respect to Fedmet and its products and could not be modified by the terms of a later scope ruling. Even if Commerce were able to consider such a later-in-time scope ruling, it is not permitted to give that ruling precedence over the scope language, the record of the investigation, the decision of this Court in *Fedmet I*, or the Fedmet scope ruling implementing that decision. Commerce attempted reliance on the subsequent S&S Refractories ruling to modify and narrow the Fedmet scope ruling, which was final to Fedmet, was properly reversed by the Trade Court.

Appellant contends the Trade Court misunderstood this Court's holding in *Fedmet I*. According to Appellant, the *Fedmet I* Court did not find there was no cut-off point for added alumina, but rather only rejected Appellant's contention that the only MAC bricks excluded by Resco were those whose alumina content was so high as take them outside the scope of the orders based on their magnesia content. This argument is unavailing. This Court's disavowal of a cut-off point for

22

alumina content arose precisely because Resco in the investigation had unequivocally excluded *all* MAC bricks without qualification so that the area of potential overlap between MCBs and MAC bricks, had been "surrendered" by Resco.

That element of *Fedmet I* is precisely what the Trade Court relied on in holding that Commerce could not now establish a five percent alumina cut-off for Fedmet's MAC bricks. Contrary to Appellant's claims that the Trade Court somehow misunderstood this Court's decision in *Fedmet I*, the Trade Court thoroughly considered and rejected these same arguments by Appellant, holding that the five percent cut-off that Commerce attempted to impose on Fedmet's bricks was contrary to this Court's holding in *Fedmet I*.

### ARGUMENT

According to Appellant "{t}he issue in this appeal is *how much* alumina is needed to transform in-scope MCBs into out-of-scope MAC bricks." ECF 17 at 17 (emphasis in original). That question was previously resolved by this Court in *Fedmet I*. *Fedmet I*, 755 F.3d at 921 ("To the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a

technical definition or "cut off point" when asked to be more specific.");

*Fedmet I*, 755 F.3d at 922 n.7 ("Even if, in fact, MCBs do overlap to some extent with MAC bricks, there would be no inconsistency between our interpretation of the (k)(1) sources and the orders because the latter are limited to only 'certain' MCBs."). The Orders cover only *certain* MCBs from China—thus, to the extent a brick could be defined as either an MCB or a MAC brick (*i.e.*, an MCB with added alumina), then it is outside the scope of the MCB Orders.

Appellant's reliance on the S&S Refractories scope ruling is unavailing. The scope ruling relevant to Fedmet's refractory bricks is the Fedmet scope ruling, which addressed Fedmet's merchandise and specifically implemented the Court's holding in *Fedmet I*. Both the specific five percent cut-off point for the amount of added alumina and the mandate of a specific testing regime adopted by Commerce in the S&S Refractories proceeding find no support in either the scope language of the Orders or in *Fedmet I*. Because the Trade Court's decision faithfully implemented *Fedmet I* as to the merchandise that was the subject of the covered merchandise inquiry, it should be affirmed.

### A. *Fedmet I* Precludes The Imposition Of A Single Quantitative Cut-off

In *Fedmet I*, this Court held that MAC bricks, understood in the industry as MCBs with added alumina, are outside the scope of the MCB Orders. This Court did not hold that some MCBs with added alumina were within and others were outside the scope of the Orders, but rather that "*all* MAC bricks were excluded." *Fedmet I*, 755 F.3d at 922 (emphasis in original).

This Court explained that, in fulfilling its statutory "responsibility to define the scope of the orders 'in such detail as the administering authority deems necessary'" during the course of an investigation, during the MCB investigation Commerce "determined not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks because it was unnecessary." *Id.* at 921-22 (quoting 19 U.S.C. § 1673e(a)(2)). Because Commerce did not find setting a cut-off point during the investigation as necessary for defining the scope of the Orders, no such cut-off point exists. "Commerce cannot later depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name.'" *Id.*

Accordingly, this Court expressly rejected the notion that "'only *some* MACBs,'" are excluded from the scope of the Orders as erroneous. *Id.* (quoting *Fedmet I CIT I*, 911 F. Supp. 2d at 1354 (emphasis in original)), and held instead that there is "no 'cut-off point'" at which addition of alumina to an MCB transforms it into a MAC brick." *Id.* at 921-22. The *Fedmet I* Court fully understood the consequence of that holding, explaining that to the "extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or 'cut off point' when asked to be more specific." *Id.* at 921.

Appellant contends that this aspect of the *Fedmet I* holding was limited to only the distinction between what it characterized as "high alumina" MAC bricks and "low alumina" MAC bricks, and argues the Court was only clarifying that "low-alumina" MAC bricks (those with less than 30 percent alumina) were covered. ECF 17 at 29-30. This argument is unavailing. While the *Fedmet I* Court indeed rejected the post-hoc attempt to distinguish among MAC bricks "low-alumina" and "high-alumina" MAC bricks, it did so precisely because it found that neither the scope language nor the (k)(1) sources provided any basis for

26

distinguishing among excluded MAC bricks based on specific alumina percentages. Instead, this Court held that all MAC bricks were excluded "by name" in the original investigation. *Fedmet I*, 755 F.3d at 922.

Neither the S&S Refractories scope ruling nor the original covered merchandise determination in the instant appeal considered whether the merchandise being examined qualified as a MAC bricks based on the industry understanding of a MAC brick adopted by Commerce in the underlying investigation. Commerce sought to simply impose a 5 percent alumina content cut-off and a specific testing requirement rather than conduct such an analysis. Appellant attempts to divert attention from this issue by repeatedly averring that the Trade Court found that refractory bricks with "trace amounts" of alumina to be considered non-subject merchandise. But that is not what the Trade Court held. Rather, it simply held, in accordance with the binding precedent in *Fedmet I*, that Commerce could not find that Fedmet's MAC bricks may be included in the scope of the MCB orders based on the terms of the S&S Refractories ruling.[5]

---

[5] The record does not support Appellant's implication that the Fedmet bricks examined by CBP contained only "trace amounts" of alumina. To the contrary, testing conducted by CBP found alumina

Appellant argues that Commerce should be allowed to impose a strict numerical test for the amount of alumina required to find a refractory brick outside the scope of the Orders. ECF 17 at 17 ("The issue in this appeal is *how much* alumina is needed to transform in-scope MCBs into out-of-scope MAC bricks.") (emphasis in original). According to Appellant, this should be permitted because this Court in *Fedmet I* "had no occasion to identify the precise" cut-off point. ECF 17 at 20. But this misses the point. This Court in *Fedmet I* did not need to specify a cut-off point because it found that no cut-off point exists.

That is, this Court concluded that because Resco excluded MAC bricks by name and declined to provide any further clarification, no precise "cut-off point" existed in the scope of the investigations. To the extent that the absence of such a cut-off point created a potential overlap between subject MCBs and non-subject MAC bricks, that overlap was "surrendered." *Fedmet I*, 755 F.3d at 921. The Court therefore held that Commerce cannot rely upon the purported need to

---

present in all of the samples it tested, in some cases in amounts exceeding [number] percent. Appx01050. Relying on the testing protocols adopted in the S&S Refractories ruling, however, Commerce deemed those tests inconclusive and concluded it was unable to determine whether those samples were within the scope of the order. Appx01042.

establish a cut-off point to mandate specific alumina content percentages to define MAC bricks in post-order scope rulings.

Appellant made substantially the same contention in moving for rehearing of the *Fedmet I* decision. There Appellant conceded that *Fedmet I* "held that any MCBs with alumina content are excluded from the orders' scope." *See* Petition for Rehearing, *Fedmet I*, Ct. No. 13-1539, ECF 58 at 8 (Oct. 3, 2014). Appellant argued that *Fedmet I* "creates an improper loophole that leaves Commerce's AD/CVD orders open to manipulation {as} Chinese producers of MCBs can avoid duties by simply adding small amounts of alumina to their bricks and calling them MAC bricks." *Id.* at 14. This Court, however, denied panel rehearing *per curiam*.[6] Appellant's attempt to use this appeal to reinterpret *Fedmet I* in a manner that was denied on rehearing should be rejected.

---

[6] Judge Wallach, who dissented from in *Fedmet I* on the ground that the holding could allow importers to avoid AD/CVD by "simply add{ing} small amounts of alumina to their products and label them MAC bricks instead of MCBs. *Fedmet I* at 925 (Wallach, J., dissenting), acknowledged granting rehearing on that ground would violate *stare decisis. Fedmet I*, Ct. No. 13-1539, ECF 67 (Fed. Cir. Jan. 28, 2015).

Appellant further claims that *Fedmet I* as applied here stands for "two principles": (1) that the "Orders cover only MCBs," and (2) that "alumina-added bricks qualify as out-of-scope MAC bricks only if they function like MAC bricks and the industry understands them to be (and therefore refers to them as) MAC bricks." ECF 17 at 18. That formulation subtly but critically alters the holding of *Fedmet I*. Rather than hold that only MCBs are within the scope, the Court held that because *all* MAC bricks are outside the scope only some MCBs are covered by the Orders. *See Fedmet I*, 755 F.3d at 922 n.7.

This Court explained that because Commerce "determined not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks because it was unnecessary," Commerce could not later "define non-subject merchandise more precisely than 'by name.'" *Id.* at 921-22. As a result, "{t}o the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or 'cut off point.'" *Id.* at 921.

In support of the alleged need to supply a numerical cut-off for alumina, Appellants also argue *Fedmet I* held that MAC bricks are only excluded from the orders if they "function like" MAC bricks." ECF 17 at 18. But the *Fedmet I* Court did not consider whether the bricks at issue had the same functions, *i.e.*, the same physical characteristics and ultimate uses, as in-scope MCBs, or whether the industry has a specific understanding, *i.e.*, purchaser expectations, of when a brick is an MCB or a MAC brick. Rather, the Court in *Fedmet I* held that, because Commerce and the Commission accepted Resco's representations in the course of the investigation that industry terminology was sufficient, and therefore decided "not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks," Commerce could not later go beyond "the meaning given to the term MAC bricks in the underlying investigations." *Fedmet I*, 755 F.3d at 921. That is precisely what Commerce again attempted in the instant covered merchandise inquiry, which the Trade Court properly rejected.

### B. Commerce Was Not Justified In Giving Precedence To The Subsequent S&S Refractories Ruling

In its initial covered merchandise determination, Commerce gave greater weight to the S&S Refractories ruling than it gave to the scope language, the record of the investigation, the decision of this Court in *Fedmet I*, or the Fedmet Scope Ruling concerning the merchandise at issue. Nonetheless, Appellant argues that the S&S Refractories ruling was consistent with *Fedmet I*, so Commerce's original covered merchandise determination overturning the Fedmet Scope Ruling should be sustained. ECF 17 at 22. Appellant is incorrect—the S&S Refractories ruling as applied by Commerce in this case is not consistent with *Fedmet I*.

As detailed at length above, this Court in *Fedmet I* held that a review of the (k)(1) sources revealed that MAC bricks were excluded from the Orders *by name. Fedmet I*, 755 F.3d at 921. This Court specifically concluded that no particular cut-off was applicable for MAC bricks because in the original investigation Resco surrendered to the accepted industry definition of "MAC brick" and, therefore, for the purposes of the Orders. *See id.* Nonetheless, in the S&S Refractories ruling, Commerce determined that to be excluded from the scope of the

32

Orders, S&S Refractories' MAC bricks must be shown to have at least five percent added alumina as tested using a specific testing methodology, XRD. Appx02135.

Where a prior ruling contains errors, "the support it provides is limited by errors in that ruling." *Star Pipe Prods. v. United States*, 463 F. Supp. 3d 1366, 1377 (Ct. Int'l Trade 2020). Therefore, to extent that a prior scope ruling conflicts with the scope itself, its support for subsequent scope decisions by Commerce is limited to the non-erroneous aspects of the ruling. *Id.* Here, as this Court in *Fedmet I* found that Commerce cannot specify cut-off points where it expressly declined to do so during the initial investigation, it could not do so during a subsequent scope proceeding. Therefore, to the extent that the S&S Refractories ruling specifies a cut-off point for alumina to differentiate MCBs from MAC bricks, it is an unlawful expansion of the scope of the Orders that cannot be relied upon in the context of the below covered merchandise inquiry.

Even if Commerce could, *arguendo*, consider that aspect of the S&S Refractories ruling, *considering* the S&S Refractories ruling is not the same as giving it *precedence* over Commerce's previous ruling on the

same Fedmet products. The question before Commerce was whether bricks imported by Fedmet are MAC bricks or MCBs. Unlike the S&S Refractories ruling, the Fedmet scope ruling is specific to Fedmet's MAC bricks, was the first scope ruling considered by Commerce, and was issued pursuant to an express holding by this Court that Fedmet's MAC bricks were outside the scope of the Orders. As a matter of law, that prior scope ruling determines whether the merchandise imported by Fedmet under examination by CBP in the EAPA investigation is, or is not, covered merchandise.

Commerce's regulation is clear that a ruling as to whether a product is covered by the scope of the order is *final.* 19 C.F.R. § 351.225(f)(4) (2011) (emphasis added. Therefore, the Fedmet scope ruling was final with respect to Fedmet, and could not be later modified by the terms of the S&S Refractories ruling. Furthermore, the S&S Refractories ruling expressly recognizes that it is not applicable to Fedmet's merchandise. Appx02134 ("{W}e have limited our analysis to only those MAC bricks identified in the requestors' scope application and not all bricks designated as MAC bricks.").

34

Commerce's job in the below covered merchandise inquiry was to clarify, for the benefit of CBP, how to distinguish between subject MCBs and MAC bricks for the purpose of the Orders. In providing that clarification, however, Commerce unlawfully introduced new fixed numerical cut-offs for alumina content that were not part of this Court's decision in *Fedmet I* and this Court rejected in that decision, and it further mandated that the measurement of alumina content must be determined according to a specific testing methodology. Neither of these requirements finds support in Commerce's previous Fedmet scope ruling. Nothing in this Court's jurisprudence permits Commerce to rely on a subsequent scope ruling addressing different products to alter the Court's previous construction of the plain language of the scope of the Orders. Commerce's reliance on the S&S Refractories ruling to bypass this Court's prior interpretation of the scope of the Orders to reach a different answer to the same question rendered its decision unlawful.

C.   **The CIT Correctly Prevented Commerce's Implementation Of A Quantitative Cut-Off Point**

Appellant's central contention is that the Trade Court's holding that Commerce cannot lawfully impose a five-percent cut-off point for alumina is contrary to this Court's decision in *Fedmet I*. ECF 17

at 24-25. That is, according to Appellant, this Court in *Fedmet I* did not preclude Commerce from setting a cut-off point for alumina. Rather, Appellant claims that, in stating there was "no cut-off point at which the addition of alumina to an MCB transforms it into a MAC brick," the CAFC in *Fedmet I* really meant that there was no cut-off point for alumina between bricks with 70 percent or more magnesia and bricks with less than 30 percent magnesia. ECF 17 at 29.

Appellant's claim finds no support in the *Fedmet I* opinion and mischaracterizes the issue that was then before this Court. This Court had no cause to consider whether there was a cut-off point between what Appellant refers to as "high-alumina bricks" and "low-alumina MAC bricks" because "high-alumina bricks" as defined by Appellant would *always* be outside the scope of the orders by virtue of their magnesia content alone. Contrary to Appellant's portrayal, this Court's observation regarding the absence of a cut-off point for alumina content arose precisely because Resco in the investigation had excluded *all* MAC bricks without qualification. *Fedmet I*, 755 F.3d at 922. This Court therefore held that the possibility of including within the orders MAC bricks that contained 70 percent or more magnesia, *i.e.*, the area of

36

potential overlap between MCBs and MAC bricks, had been

"surrendered" by Resco, *id.* at 921 ("To the extent that MCBs and MAC

bricks do in fact overlap to some degree, the overlap was surrendered by

Resco's failure to provide a technical definition or "cut off point" when

asked to be more specific."), and therefore, "{e}ven if, in fact, MCBs do

overlap to some extent with MAC bricks, there would be no

inconsistency between our interpretation of the (k)(1) sources and the

orders because the latter are limited to only 'certain' MCBs." *Id.* at 922

n.7.

That element of this Court's decision is precisely what the Trade

Court relied on in holding in this action that Commerce could not now

attempt to establish a five percent alumina cut-off for non-subject MAC

bricks. Appx00015 (quoting *Fedmet I*, 755 F.3d at 921-922, 922 n.7).

Appellant has failed to identify any misapprehension on the part of the

Trade Court. To the contrary, the Trade Court thoroughly considered

and rejected Appellant's arguments in support of the five percent cut-off

and held instead that the addition of alumina to an MCB makes it an

out-of-scope MAC brick. Appx00013-Appx00016.

Appellant doubles-down, claiming that this Court in *Fedmet I* employed the same definitions adopted by the CIT in *Fedmet I CIT I*. ECF 17 at 28-29 (claiming that "{t}his Court 'adopted the same methodology, explaining that the term MAC bricks 'can refer to low-alumina bricks as well as high-aluminum bricks.'"). To the contrary, it is evident from a careful reading of *Fedmet I* the Court rejected the use of those definitions:

> The Trade Court erred in relying on evidence outside the (k)(1) sources to find ambiguity within those sources. Although the court acknowledged the repeated statements in the (k)(1) sources excluding MAC bricks, it found that "two critical facts" instilled the term with "considerable ambiguity." First, the court found that "advertisements and other record evidence indicate that the term 'MACB' can refer to low-alumina bricks as well as high-alumina bricks." Second, the court found that "record evidence of industry naming conventions reasonably suggests that so long as the magnesia content of a brick with added alumina remains above 70%, it can be called *either* an MCB *or* an MACB." But the (k)(1) sources do not mention, much less make a distinction, between so-called "low-alumina" and "high-alumina" bricks. Indeed, in making its findings, the Trade Court relied solely on information provided by interested parties or obtained through Commerce's own research during the course of the scope proceedings. The (k)(1) sources themselves neither support the "two critical facts" nor the court's conclusion that "Resco may have intended to exclude only *some* MACBs."

*Fedmet I*, 755 F.3d at 922 (quoting *Fedmet I CIT I*, 911 F. Supp. 2d at 1354). Commerce and the CIT in *Fedmet I CIT I* erroneously employed those terms because, as this Court in *Fedmet I* explained, they were not in the record of the original investigation.

Thus, the Trade Court correctly concluded that "the Federal Circuit rejected the agency's attempt to expand the orders' scope to include 'low-alumina' bricks. *Id.* Neither the petitioner's representations nor the scope language adopted by Commerce "mention{ed}, much less ma{d}e {a} distinction, between so-called 'low-alumina' and 'high-alumina' bricks." Appx00022 (quoting *Fedmet I*, 755 F.3d at 922). The CIT further understood that this Court's holding in *Fedmet I* that Commerce "could not 'depart from its previous understanding based on its own failure to define non-subject merchandise more precisely than 'by name' . . . applies with equal force here." As a result, "{Commerce} cannot now go beyond 'the name of MAC bricks' and supply the 'chemical composition' alumina) or 'technical specification' (functionality) requirements that Resco failed to provide and that the agency failed to adopt." Appx00022-Appx00023.

Appellant nevertheless contends the CIT's holding "guts" the Orders by "dramatically narrowing their scope and making it easy for MCB importers to avoid payment of substantial AD/CVD duties." ECF 17 at 31. Appellant offers no legal authority for this proposition, which this Court already considered and rejected in *Fedmet I*, *see* Petition for Rehearing, *Fedmet I*, Ct. No. 13-1539, ECF 58 at 8 (Oct. 3, 2014) ("{*Fedmet I*} creates an improper loophole that leaves Commerce's AD/CVD orders open to manipulation {as} Chinese producers of MCBs can avoid duties by simply adding small amounts of alumina to their bricks and calling them MAC bricks."); *Fedmet I*, Ct. No. 13-1539, ECF 67 (Fed. Cir. Jan. 28, 2015), and does not explain how this apprehension of circumvention would justify the imposition of a cut-off point in the course of a scope ruling where this Court had expressly held none existed. Rather, Appellant simply points to Fedmet marketing sheets of bricks for bricks sold under its the "Pinnacle" brand as containing "0.2-0.5 percent" alumina as supporting the premise that "every MCB in the record, and potentially all MCBs, would be out of scope under the Trade Court's ruling." ECF 17 at 31.

But as Fedmet repeatedly explained in the course of the originating EAPA proceeding, Fedmet has been selling MAC bricks under the Pinnacle brand because it has brand recognition, which is why the brochures for those Pinnacle bricks provide the chemical analysis is of the "magnesite portion" only, and do not provide the amount of antioxidants, carbon, or alumina added to the magnesite. Appx02209-Appx02211. Thus, all compositions that Appellant points to on the record as constituting MCBs are, in reality, one raw material used in the creation of MAC bricks, not specifications for finished MCBs. *See, e.g.*, Appx01903.

Appellant, however, further claims that "{n}obody in this case has ever suggested that MCBs with zero alumina even exist." ECF 17 at 31. To the contrary Fedmet has consistently maintained the position that MCBs do not contain added alumina since the original scope ruling, presented it in briefing before this Court in *Fedmet I*, argued that before Commerce in the below covered merchandise inquiry, and argued that before the CIT, both in the course of the EAPA appeal and in the below appeal. *See* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, from

41

Barbara E. Tillman, Director, AD/CVD Operations, Office 6, "Certain Magnesia Carbon Bricks From the People's Republic of China and Mexico: Preliminary Scope Ruling - Fedmet Resources Corporation" at 30 (Dep't of Commerce Mar. 30, 2012) ("Fedmet takes the absolute position that MCBs do not contain 'added' alumina."), available at https://access.trade.gov/ (Barcode 3067474-01); Brief of Plaintiff-Appellant, *Fedmet I*, Ct. No. 13-1539, ECF 25 at 32 (Sept. 30, 2013) ("MCBs do not contain added alumina."); Reply Brief of Plaintiff-Appellant, *Fedmet I*, Ct. No. 13-1539, ECF 38 at 19 (Dec. 2, 2013) ("MCBs, in contrast, do not contain added alumina"); Appx02088 ("MAC bricks, however, contain added alumina, while MCBs do not contain alumina and, as noted, were expressly excluded by Resco."); Appx02171-02172 ("MAC bricks are distinguished from MCBs by the fact that in addition to the magnesia and carbon, MAC bricks also contain added alumina, while MCBs do not contain alumina."); Brief of Plaintiff, *Fedmet Resources Corp. v. United States*, USCIT Ct. No. 23-00117, ECF 37-1 at 4 (Dec. 4, 2023). Like the rest of Appellant's attempts to rewrite history, this attempt too fails.

Finally, Appellant objects to the CIT's suggestion that Appellant concerns about circumvention would be better served under the statute by filing an anticircumvention allegation is premature, but its only reason for that claim is because this case has not yet been decided by this Court. ECF 17 at 32. In this manner, Appellant seems to miss the hint—if they wish to expand the scope of the Orders to protect against alleged "trace amounts" of added alumina, because Commerce "may not change the original scope of its orders through the interpretative process," *Fedmet I*, 755 F.3d at 921 (citing *Tak Fat*, 396 F.3d at 1383), Appellant would only be able to request that Commerce lawful do so by utilizing the "section {that} prevents the circumvention of antidumping and countervailing duty orders by including within the scope of the orders products that have been altered in minor ways so as to remove them from the literal scope of the orders." *Duferco*, 296 F.3d at 1098. As the Trade Court puts it, Appellant "may simply be barking up the wrong tree." Appx00025.

## CONCLUSION

For the forgoing reasons, Plaintiff-Appellee respectfully requests that this Court affirm the holding of the Trade Court.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1160

**Short Case Caption:** Fedmet Resources Corporation v. Magnesia Carbon Bricks Fair Trade Committee

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 8,410 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/23/2026

Signature: /s/ R. Will Planert

Name: R. Will Planert

Save for Filing